FILED
United States Court of Appeals
Tenth Circuit

June 14, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: RICH GLOBAL, LLC,

    Debtor.

------------------------------

RICH DAD OPERATING COMPANY,
LLC,

    Appellant,

v.

TRACY L. ZUBROD, Chapter 7 Trustee;
LEARNING ANNEX HOLDINGS, LLC;
LEARNING ANNEX, LLC; LEARNING
ANNEX, L.P.,

    Appellees.

No. 15-8103
(D.C. No. 1:13-CV-00167-ABJ)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

Creditor Rich Dad Operating Company, LLC (RDOC) appeals from the district

court's affirmance of the bankruptcy court's order approving a settlement agreement

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

between the trustee for the debtor's estate and another creditor. RDOC obtained a stay of the bankruptcy court's order pending its appeal to the district court, but it did not seek a stay of the district court's order pending this appeal. After the automatic stay of the district court's order expired, the trustee and the creditor performed their obligations under the settlement agreement. Accordingly, they now move this court to dismiss this appeal as moot. Because we are not persuaded that the appeal is moot, we proceed to the merits and review the bankruptcy court's approval of the settlement agreement. But because we also are not persuaded by RDOC's challenges to the decision, we affirm.

## I. BACKGROUND

RDOC is the sole member and manager of the debtor, Rich Global, LLC (Rich Global). Rich Global lost a lawsuit brought by appellees Learning Annex Holdings, LLC, Learning Annex, LLC, and Learning Annex L.P. (collectively, Learning Annex) in the Southern District of New York. In July 2012, that court entered judgment against Rich Global and in favor of Learning Annex for nearly $23.7 million. Rich Global appealed to the Second Circuit Court of Appeals. Learning Annex cross-appealed the district court's dismissal of one of its claims, as well as its grant of judgment as a matter of law to another defendant in the action.

The Southern District of New York ordered Rich Global to post a reduced appeal bond, but instead Rich Global filed a Chapter 7 bankruptcy petition in the District of Wyoming. The filing of that petition automatically stayed the Second Circuit appeal and cross-appeal. The bankruptcy court appointed appellee

2

Tracy L. Zubrod as trustee (the Trustee). Two creditors filed proofs of claim: (1) RDOC for approximately $2.2 million, and (2) Learning Annex for the amount of the judgment with interest, almost $23.7 million.

Initially the Trustee intended to abandon Rich Global's interest in the Second Circuit appeal. She rejected RDOC's offer to indemnify the estate for the costs of pursuing the appeal. Ultimately, however, the Trustee and Learning Annex entered into the settlement agreement (the Agreement). The principal terms of the Agreement are: (1) Learning Annex would pay the bankruptcy estate $100,000; (2) the Trustee would dismiss the Second Circuit appeal, with prejudice; (3) Learning Annex would dismiss Rich Global as an appellee in its cross-appeal; and (4) "[a] single claim shall be allowed as a general unsecured claim in favor of . . . Learning Annex . . . in the amount of $23,690,999.41," Aplt. App., Vol. 2 at 467. Over RDOC's objection, the bankruptcy court approved the Agreement. RDOC moved for and was granted a stay pending its appeal to the U.S. District Court for the District of Wyoming.

On August 18, 2015, the district court affirmed the bankruptcy court's order. By operation of Fed. R. Bankr. P. 8025(a), the district court's judgment was automatically stayed for fourteen days. RDOC did not move for a further stay of the district court's order. After the end of the automatic stay period, the Trustee and Learning Annex performed their obligations under the Agreement. Learning Annex had already paid the Trustee $100,000, so on September 4, the Trustee and Learning Annex filed their agreed-upon stipulation to dismiss Rich Global's Second Circuit

3

appeal and Learning Annex's cross-appeal against Rich Global. On September 8, the Second Circuit dismissed the appeal and the cross-appeal against Rich Global, and it issued its mandate. The next week, it lifted the stay of the cross-appeal and set a briefing schedule.

On September 16, RDOC appealed to this court from the district court's order. In light of their performance of the Agreement, the Trustee and Learning Annex moved to dismiss the appeal as moot.

## II. DISCUSSION

### A. Mootness

#### 1. Constitutional Mootness

Under Article III of the Constitution, the judiciary has authority to adjudicate "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (internal quotation marks omitted). "An appeal is constitutionally moot if the court can fashion no meaningful relief. . . . [I]f a court can fashion some form of meaningful relief, even if it only partially redresses the grievances of the prevailing party, the appeal is not moot." *Search Market Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327, 1336 (10th Cir. 2009) (brackets and internal quotation marks omitted). The burden of establishing there is no longer a live case or controversy is on the party claiming mootness, *see id.*, here the Trustee and Learning Annex.

4

The Trustee and Learning Annex argue that given the performance of their obligations under the Agreement, particularly the dismissal of the Second Circuit matters, this court cannot afford RDOC any meaningful relief. RDOC asserts, to the contrary, that "the Settlement Agreement and its effects upon the bankruptcy estate can be unwound and modified without substantial difficulty." Resp. to Mot. to Dismiss at 3. It suggests that the $100,000 payment can be returned to Learning Annex; that "nothing would prevent the parties from requesting that the Second Circuit vacate its recent orders dismissing the Second Circuit Appeal or the cross-appeal against Rich Global and an affiliate," *id.* at 8-9; and that "Learning Annex's allowed general unsecured claim against the bankruptcy estate of Rich Global can be adjusted, discounted, subordinated or disallowed should this Court decide to reverse the decisions made by the district court and the bankruptcy court," *id.* at 9.

It appears that the Trustee could return the $100,000. But of course this court has no ability to compel the Second Circuit to recall its mandate. Moreover, a court of appeals may exercise its power to recall the mandate "only in extraordinary circumstances"; "it is [a power] of last resort, to be held in reserve against grave, unforeseen contingencies." *Calderon v. Thompson*, 523 U.S. 538, 550 (1998). And the cross-appeal has moved forward with briefing. In these circumstances, there is virtually no chance that the appeal and cross-appeal can be resurrected. RDOC's

5

suggestion that the settlement can be unwound because nothing prohibits the parties from seeking such resurrection borders on the frivolous.[1]

This appeal is not moot, however, if we may offer even partial relief. And the burden of showing the absence of any meaningful relief rests on the Trustee and Learning Annex. Those parties have failed to overcome RDOC's assertion that, if we were to reverse the decision to approve the Agreement, RDOC would be able to challenge Learning Annex's claim in ways that it could not do if the Agreement stands. In light of this possibility of relief, the appeal is not constitutionally moot.

## 2.     Equitable Mootness

In the bankruptcy context, equitable mootness may also be a consideration. Under this doctrine, "equitable, prudential, or pragmatic considerations can render an appeal of a bankruptcy court decision moot even when the appeal is not constitutionally moot." *Paige*, 584 F.3d at 1337 (internal quotation marks omitted). "As with constitutional mootness, we hold that the party seeking to prevent this court from reaching the merits of the appeal bears the burden of proving that, for pragmatic

---

[1] In addition, these arguments contradict RDOC's prior statements to the bankruptcy court in its motion for stay. RDOC asserted that it would suffer irreparable harm in the absence of a stay because "[t]he Judgment allows Trustee to dismiss the Second Circuit Appeal *with prejudice*. Once the Second Circuit Appeal is so dismissed, it is gone forever and Debtor's estate will have no opportunity to reduce a $23 million claim against it." Aplt. App., Vol. 4 at 870. It later stated that "[d]ismissing the Second Circuit Appeal could also render the . . . [a]ppeal moot because, even if it reverses the Judgment, it is highly unlikely the [district court] can revive the Second Circuit Appeal once the Second Circuit dismisses it." *Id.* at 876 (citing cases). Because we consider untenable RDOC's current position regarding the Second Circuit appeal, we need not decide whether judicial estoppel applies. We note, however, that the courts generally disfavor parties' changing positions as it may suit them. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

reasons, the court should abstain from reaching the merits of the case." *Id.* at 1339-40.

We apply equitable mootness at our discretion. *See C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 641 F.3d 1235, 1240 (10th Cir. 2011). Upon careful consideration, we decline to decide whether this appeal is equitably moot. The parties have not explicitly argued for equitable mootness, and this court has not yet decided whether equitable mootness should apply in a Chapter 7 case, *see id.* Accordingly, we will not "decide whether the doctrine can be applied, and if so, weigh the doctrine's six factors in this case in the face of an underdeveloped record on this issue." *Id.*

### 3. Statutory Mootness

RDOC's first merits argument also triggers a mootness inquiry—this time statutory mootness. RDOC asserts that the bankruptcy court erred in declining to apply the sale-of-property provisions in 11 U.S.C. § 363(b), instead approving the Agreement solely under Fed. R. Bankr. P. 9019. The Trustee and Learning Annex counter that, if § 363 applies, this appeal is moot under § 363(m), which provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

"[Section] 363(m) forecloses any remedy . . . that would affect the validity of the trustee's sale." *C.W. Mining Co.*, 641 F.3d at 1239. As with the other mootness

7

doctrines, it is the Trustee's and Learning Annex's burden to prove that the appeal is moot under § 363(m). *See id.*

RDOC asserts that § 363(m) does not apply because the bankruptcy court did not apply § 363. It further asserts that § 363(m) only applies to a "good faith" purchaser, and in this case there has been no determination that Learning Annex acted in good faith.

It seems disingenuous for RDOC to complain about the bankruptcy court's failure to apply § 363(b) while simultaneously disclaiming the applicability of § 363(m). Nevertheless, we do not consider RDOC's § 363 argument statutorily moot. By the statute's plain terms, there must be a determination of "good faith," and the Trustee and Learning Annex have not shown any such determination.

For these reasons, we do not consider any portion of this appeal to be moot, and we move to the parties' merits arguments.

**B.      Merits Arguments**

"Even though this appeal comes to us from the district court, we review a bankruptcy court's decisions independently, examining legal determinations de novo and factual findings for clear error." *FB Acquisition Prop. I, LLC v. Gentry (In re Gentry)*, 807 F.3d 1222, 1225 (10th Cir. 2015). "A bankruptcy court's approval of a compromise may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion." *Reiss v. Hagmann*, 881 F.2d 890, 891-92 (10th Cir. 1989) (citation omitted). "A bankruptcy court is inherently a court of equity," and "[t]here is an overriding consideration that equitable principles govern the exercise of

bankruptcy jurisdiction." *Sec. Nat'l Bank v. Turner (In re Ocobock)*, 608 F.2d 1358, 1360 (10th Cir. 1979) (internal quotation marks omitted).

### 1. 11 U.S.C. § 363

Section 363(b) allows the trustee to sell estate property outside the ordinary course of business. As stated, RDOC argues that the bankruptcy court erred in not applying § 363(b) standards, instead approving the Agreement solely under Fed. R. Bankr. P. 9019. It asserts that a remand is necessary for the bankruptcy court to consider the Agreement under § 363(b) standards, including whether the Agreement is within the Trustee's sound business judgment.

Although the federal courts are split, the majority have held that a settlement of claims can also qualify as a sale of property under § 363. *See* 3 *Collier on Bankruptcy* ¶ 363.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). For purposes of this appeal, we assume without deciding that this court would adopt the majority position. But courts have also held that "[w]hether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation." *Goodwin v. Mickey Thompson Enter. Grp., Inc. (In re Mickey Thompson Enter. Grp., Inc.)*, 292 B.R. 415, 422 (B.A.P. 9th Cir. 2003); *see also Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 265 (5th Cir. 2010) (same). "In most compromises, the procedures of [Fed. R. Bankr. P.] 6004 [implementing § 363] and the substance of Code section 363 *will not* be implicated." 10 *Collier on Bankruptcy* ¶ 6004.01[6] (emphasis added).

9

In both *Moore* and *Mickey Thompson,* the courts were persuaded that § 363 auctions were required because the tendering of higher offers indicated that an auction could yield a better result for the estate. *See Moore*, 608 F.3d at 265; *Mickey Thompson*, 292 B.R. at 421, 422; *see also* 10 *Collier on Bankruptcy* ¶ 6004.01[6] (indicating that § 363 procedures are necessary "if other parties indicate that they are willing to pay more for the claim, or if it is otherwise shown that a bidding procedure would be appropriate"). Those decisions, however, were context-dependent. *See Mickey Thompson*, 292 B.R. at 422 n.7 ("We are not suggesting that every compromise of a bona fide controversy presented to a bankruptcy court under Rule 9019 must pass muster as a sale under section 363. We are sensitive to the different considerations that come into play."). As the district court recognized, in this case the circumstances are significantly different. The "claims" at issue are defensive appellate arguments. No other person or entity offered more to settle the appeal; RDOC itself went only so far as to offer to indemnify the estate for the costs of pursuing the appeal. Moreover, the parties already had demonstrated the futility of trying to resort to an auction, given that an earlier proposed auction never went forward because they failed to agree on procedures. In these circumstances, we reject RDOC's assertion that the bankruptcy court's failure to employ § 363(b) protections requires reversal of the order approving the Agreement.

## 2.     Fed. R. Bankr. P. 7052

RDOC argues that the bankruptcy court's order fails to satisfy Fed. Bankr. R. 7052, which incorporates Fed. R. Civ. P. 52 into certain bankruptcy proceedings. Under Rule 52(a)(1), "the court must find the facts specially and state its conclusions of law separately."

"The Rule is designed to provide the appellate court with a clear understanding of the basis of the trial court's decision and to aid the trial court in considering and adjudicating the facts." *Colo. Flying Acad., Inc. v. United States*, 724 F.2d 871, 877 (10th Cir. 1984). "Findings of fact satisfy Rule 52(a) . . . if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Bell v. AT & T*, 946 F.2d 1507, 1510 (10th Cir. 1991) (internal quotation marks omitted). Findings need not be in a specific form and need not be detailed. *See Colo. Flying Acad., Inc.*, 724 F.2d at 878; *Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir. 1965).

RDOC complains that the bankruptcy court's order is insufficient for appellate review. We disagree. The order is adequate to show this court the basis for the decision. To the extent that RDOC believes the bankruptcy court should have been more specific regarding certain points, "[g]eneral findings which realistically meet and resolve the issues in dispute may be sufficient in the absence of occasion or request for more specific ones." *Featherstone*, 345 F.2d at 250. The bankruptcy court adequately gave "the reviewing court some basis for distinguishing between well-reasoned conclusions arrived at after comprehensive consideration of relevant

11

factors and mere boilerplate approval." *Official Comm. of Unsecured Creditors of W. Pac. Airlines, Inc. v. W. Pac. Airlines, Inc. (In re W. Pac. Airlines, Inc.)*, 219 B.R. 575, 580 (D. Colo. 1998) (internal quotation marks omitted).

### 3.      Fed. R. Bankr. P. 9019

Fed. R. Bankr. P. 9019(a) allows the bankruptcy court to approve a compromise or settlement upon notice and a hearing.  RDOC asserts that the bankruptcy court abused its discretion in approving the Agreement under Rule 9019.

In undertaking its analysis, the bankruptcy court applied the following four factors:  (1) the chance of success of the litigation on the merits; (2) possible problems in collecting a judgment; (3) the expense and complexity of the litigation; and (4) the interest of creditors.  *See W. Pac. Airlines*, 219 B.R. at 579; *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997); William L. Norton, Jr. and William L. Norton III, 8 *Norton Bankruptcy Law & Practice* § 167:2 (3d ed. 2011).  The parties do not argue that the bankruptcy court erred in identifying these as the appropriate factors, and so we assume without deciding that they are.

"[A] court's general charge is to determine whether the settlement is fair and equitable and in the best interests of the estate."  *W. Pac. Airlines*, 219 B.R. at 579 (internal quotation marks omitted).  "[T]he court should, without conducting a trial or deciding the numerous questions of law and fact, review the issues and determine whether the settlement falls below the lowest point in the range of reasonableness."

12

8 *Norton Bankruptcy Law & Practice* § 167.2 (brackets and internal quotation marks omitted).

Contrary to RDOC's assertions, we are not convinced that the bankruptcy court failed to adequately apprise itself of the facts and the law pertaining to the Second Circuit appeal. The court reviewed "the history of the litigation, the counts alleged, . . . the District Court opinions and the supporting documents found on the record." Aplt. App., Vol. 4 at 860. It was not required to "decid[e] the numerous question of law and fact." 8 *Norton Bankruptcy Law & Practice* § 167.2. Nor was it required to conduct a detailed analysis of the underlying law or a risk-adjusted value of continuing litigation, as RDOC urges. And the bankruptcy court did not ignore either the Southern District of New York's assessment or RDOC's indemnity offer, as RDOC also asserts. It is apparent that the court was aware of these issues, as it addressed them in the order. We see no abuse of discretion with regard to any of these points.

RDOC states that the bankruptcy court's failure to reject the Agreement, in light of its indemnity offer, is per se reversible error. We disagree. In *Reiss*, this court reversed the rejection of a settlement where the only creditor had offered to pay the costs of a lawsuit upon which rested the only hope of any recovery for disbursement to that creditor. 881 F.2d at 893. We did not create a per se rule, however, and in fact we qualified our holding by stating "[a]t least in a case like that at bar." *Id.* The circumstances here are unlike those in *Reiss*.

13

RDOC also asserts that the bankruptcy court erred in concluding that if the Second Circuit appeal were reversed, a third trial would be required. Even if error, however, we do not consider it reversible error. The bankruptcy court's concern about the potential of an appeal or further litigation dragging on for an extended time was not an invalid one.

Regarding the interests of the creditors, RDOC argues that the bankruptcy court erred in weighing the relative effects of the Agreement on Learning Annex and RDOC—if the Second Circuit were to reverse the judgment, RDOC would be the sole remaining creditor and would be paid a significant portion of its claim. The bankruptcy court, however, was well aware of RDOC's creditor status (as well as its status as Rich Global's only member). RDOC also asserts that the bankruptcy court, while expressing concern about RDOC's proposed indemnity arrangement aligning RDOC and the Trustee against Learning Annex, instead impermissibly allowed the Trustee and Learning Annex to align together against RDOC when it approved the Agreement. But the bankruptcy court was concerned that the indemnity agreement would "put[] the Trustee in the position of working for a creditor and equity shareholder of the estate, against the only other creditor." Aplt. App., Vol. 4 at 861. The Agreement, in contrast, did not put the Trustee in the position of "working for" Learning Annex.

Having thoroughly reviewed the arguments, the record, and the applicable law, we cannot conclude that the bankruptcy court abused its discretion. The approval of

the Agreement does not "achieve[] an unjust result amounting to a clear abuse of discretion." *Reiss*, 881 F.2d at 891-92.

### III.    CONCLUSION

The motion to dismiss the appeal as moot is denied.  The judgment is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge