**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LIBERTY BANK, F.S.B.,

    Appellant,

v.

D.J. CHRISTIE, INC.; DAVID J.
CHRISTIE; ALEXANDER W. GLENN;
ALAN E. MEYER; JOHN R. PRATT,

    Appellees.

No. 16-3230
(D.C. No. 5:15-CV-04861-CM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Liberty Bank, F.S.B., appeals a district court order affirming the bankruptcy

court's approval of a settlement agreement, which exhausted an obligation owed by

Liberty's garnishees to its judgment debtor. Exercising jurisdiction under 28 U.S.C.

§ 158(d), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Following a failed joint venture to develop real estate in Kansas, Alan E. Meyer and John R. Pratt obtained a federal jury verdict against D.J. Christie, Inc., David J. Christie, and Alexander W. Glenn (collectively, "Christie parties"), for almost $9.2 million. We affirmed in part and reversed in part, leaving intact a judgment in favor of Meyer and Pratt for approximately $7.1 million ("Federal Judgment"). *See Meyer v. Christie*, 634 F.3d 1152, 1161-63 (10th Cir. 2011). Our mandate entered on April 25, 2011. Four days later, on April 29, 2011, the Christie parties began acquiring outstanding judgments in Iowa against Meyer and Pratt for a combined total of some $7.4 million ("Iowa Judgments").

Shortly thereafter, in May 2011, Liberty served garnishment orders against Christie and D.J. Christie, Inc. to recover on two judgments totaling $948,084.11 it had obtained against Meyer in 2010. Christie answered the garnishments on May 31, 2011, asserting that the Christie parties had no liability to Meyer because any amounts owed to Meyer were offset by the amounts Meyer and Pratt owed on the Iowa Judgments acquired by the Christie parties. Christie claimed that Meyer and Pratt were indebted to them on account of the Iowa Judgments.

D.J. Christie, Inc. initiated the underlying Chapter 11 proceeding, and then filed an adversary complaint, seeking to offset the Federal Judgment with the Iowa Judgments. Meyer and Pratt initially resisted but eventually agreed to settle. As recited in the settlement agreement, the parties were embroiled in at least twenty

2

legal proceedings in multiple jurisdictions. Meyer, Pratt, and the Christie parties agreed to the offset and a $1.825 million payment from D.J. Christie, Inc. to Meyer and Pratt's attorneys, which would constitute a final settlement of their claims. Liberty's judgments against Meyer were noted in the settlement agreement. Liberty was not a party to the agreement or the negotiations.

Liberty moved to intervene in the adversary proceeding, claiming the Federal and Iowa Judgments were not subject to offset and the settlement agreement impaired its garnishment rights. The bankruptcy court granted Liberty's motion to intervene and heard oral argument on the matter but ultimately approved the settlement agreement. Liberty appealed to the district court, which reversed and remanded for further proceedings. On remand the bankruptcy court again approved the settlement agreement, finding that Liberty's interests were subordinate to the offset and other senior interests. The district court affirmed and denied rehearing. Liberty now appeals to this court.

## II

"Even though this appeal comes to us from the district court, we review a bankruptcy court's decisions independently, examining legal determinations de novo and factual findings for clear error." *FB Acquisition Prop. I, LLC v. Gentry (In re Gentry)*, 807 F.3d 1222, 1225 (10th Cir. 2015). "A bankruptcy court's approval of a compromise may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion. The bankruptcy court's decision to approve the settlement,

3

however, must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 891-92 (10th Cir. 1989) (citation omitted).

  A. *Analytical Framework*

  Liberty first challenges the analytical framework used by the bankruptcy court to evaluate the settlement agreement. We perceive no error.

  "A court's general charge is to determine whether the settlement is fair and equitable and in the best interests of the estate." *Rich Global, LLC v. Zubrod (In re Rich Global, LLC)*, 652 F. App'x 625, 631 (10th Cir. 2016) (unpublished) (brackets and internal quotation marks omitted). In evaluating a proposed settlement, "the bankruptcy court is not required to conduct a mini-trial . . . or decide numerous questions of law and fact," but it "must canvas the issues to determine whether the proposed settlement falls below the lowest point in the range of reasonableness." William L. Norton, Jr. and William L. Norton III, 8 *Norton Bankr. Law & Prac.* § 167:2 (3d ed. 2011) (brackets and internal quotation marks omitted).

  Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Four factors guide the bankruptcy court's analysis of a proposed settlement agreement: "(1) the chance of success of the litigation on the merits; (2) possible problems in collecting a judgment; (3) the expense and complexity of the litigation; and (4) the interest of the creditors." *In re Rich Global*, 652 F. App'x at

4

631; *see also Korngold v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 250, 256 (B.A.P. 10th Cir. 2006); 8 *Norton Bankr. Law & Prac.* § 167:2.

Employing these standards, the bankruptcy court evaluated the settlement agreement and determined it was fair and equitable. The court reasoned that the parties had been litigating the offset issue for almost two years and Christie would have substantial difficulty collecting the Iowa Judgments because Meyer and Pratt were seemingly insolvent. Moreover, the court observed that there could be additional parties claiming an interest in the Federal Judgment, while Pratt was signaling his intent to go to trial. Weighing these difficulties, the court noted that none of the creditors were harmed by the settlement because they negotiated it and supported its approval. The district court's remand did not alter these findings, which the bankruptcy court relied upon in its final decision. This was a sound analysis.

Nevertheless, Liberty suggests that any analysis under Rule 9019(a) impairs its rights. Liberty asserts the proper analysis should follow *Local No. 93, International Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986), and *Overton's, Inc. v. Interstate Fire & Casualty Ins. Co. (In re Sportstuff, Inc.)*, 430 B.R. 170 (B.A.P. 8th Cir. 2010). Specifically, Liberty cites *Local No. 93* for the proposition that "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . ." 478 U.S. at 529. And in *Sportstuff,* the court stated that "[a] 'settlement' between only two parties to a multi-party lawsuit is

5

not a settlement, and the procedure to approve a compromise under Fed. R. Bankr. P. 9019(a) cannot be used to impose an injunction on the non-settling parties." 430 B.R. at 181.

We do not dispute these general principles, but neither of these cases requires a different analysis. *Local No. 93* was a Title VII suit in which a labor union opposed a consent decree intended to remedy discriminatory employment practices. 478 U.S. at 504, 510. That case offers no particular guidance for analyzing a bankruptcy settlement agreement under the circumstances here. Of course, we recognize a settlement "cannot dispose of the valid claims of nonconsenting intervenors" and cannot "impose[] obligations on a party that did not consent," *id.* at 529, but the settlement here does not do those things. Liberty's claims against Meyer remain intact, and the agreement imposes no legal duties on Liberty. The settlement agreement simply exhausts the proceeds of the Federal Judgment, preventing Liberty from garnishing them due to its lower priority, as we will explain below.

*Sportstuff* is similarly unavailing. That non-binding case involved settlements that extinguished the claims and contract rights of third-party vendors against the debtor's insurers. 430 B.R. at 176-78. The bankruptcy court approved the settlements, but the Eighth Circuit Bankruptcy Appellate Panel reversed, ruling the bankruptcy court lacked jurisdiction or authority either to extinguish the vendors' contract rights or to enjoin them from pursuing their claims. *Id.* at 178-79, 181. There are no analogous facts here because the settlement does not prevent Liberty

from pursuing whatever rights it has against Meyer. In short, these cases do not demonstrate that the bankruptcy court applied the wrong analysis.[1]

## B. *Nature of Analysis*

Liberty also challenges the nature of the bankruptcy court's analysis. Asserting the court summarily determined that the settling parties were entitled to offset the Federal and Iowa Judgments, Liberty contends "it was error for the Bankruptcy Court to decide that issue without a full due process evidentiary hearing." Aplt. Br. at 29. Liberty contends a due process hearing was necessary because the offset effectively extinguishes its garnishment liens both in the adversary proceeding and in the separate state-court garnishment proceedings.

This argument misapprehends the extent of analysis required under Rule 9019(a). The bankruptcy court was not charged with conducting a mini-trial on the propriety of the offset; rather, the court was obliged to canvass the issues to determine whether the proposed settlement was reasonable. Consistent with that directive, the bankruptcy court reviewed the proposed offset and the relevant legal

---

[1] Liberty advances several other arguments asserting the bankruptcy court's decision is "particularly perplexing" because its initial decision was reversed by the district court, and the bankruptcy court granted Liberty's motion to intervene, quoted from *Local No. 93* and *Sportstuff*, and agreed that the offset issue was not dispositive. *See* Aplt. Br. at 20-24. Liberty fails to explain how these arguments indicate the bankruptcy court employed the wrong legal analysis. To the extent Liberty suggests allowing it to intervene is inconsistent with the bankruptcy court's approval of the settlement agreement, *Local No. 93* rejected a similar argument, holding that an intervenor has no "power to block [a consent] decree merely by withholding its consent," 478 U.S. at 529. To the extent Liberty's remaining arguments are relevant to other issues in this appeal, we address them as appropriate.

7

authority and determined there were no circumstances that precluded the offset. This analysis of the offset was adequate to assess the fairness of the settlement agreement. As Liberty acknowledges, the bankruptcy court expressly stated that "[a]lthough these matters may involve consideration of the Kansas law of offset, this is not an offset case; this case is about approval of a proposed settlement." Aplt. App. at 396. Liberty protests that the bankruptcy court should have considered its "rights in the Federal Judgment prior to any determination of whether the Christie Parties can or cannot offset the Iowa Judgments." Aplt. Br. at 30 (internal quotation marks omitted). But that argument attempts to bypass any analysis of Liberty's priority interest relative to the offset.

Moreover, Liberty's dispute with the merits of the offset is unpersuasive. Liberty insists an offset is discretionary and there are equitable grounds here for denying it, specifically, the alleged collusion between Christie and D.J. Christie, Inc. in pursuing the settlement agreement. But there is nothing collusive about these debtors seeking to settle their debt. Liberty notes the Iowa Judgments are "essentially worthless" and the offset could be reduced by the actual value of the Iowa Judgments. Aplt. Br. at 32 (internal quotation marks omitted). But Meyer and Pratt agreed to the offset, and the bankruptcy court recognized there was no basis for prohibiting it. *See Mynatt v. Collis*, 57 P.3d 513, 534-35 (Kan. 2002) (setting forth criteria for offset). These circumstances fail to indicate the settlement agreement was unreasonable in light of the offset.

8

As for Liberty's assertion that it was entitled to a due process hearing, we must clarify its argument. To the extent Liberty claims it was entitled to "a due process trial" because the offset extinguished its garnishment liens, Aplt. Br. at 29, Liberty forfeited that theory by failing to preserve it either in the district court or in the bankruptcy court. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011). To the extent Liberty asserts the bankruptcy court committed legal error in failing to hold an evidentiary hearing on the offset under Rule 9019(a), the argument is meritless. Liberty was allowed to intervene, challenge the settlement agreement, and appeal its approval to the district court. On remand, the bankruptcy court held a status conference and took briefing on the scope of the remand. The bankruptcy court concluded that the pertinent issues before the court were the priority of competing interests in the Federal Judgment and the impact on Liberty of the settlement agreement's offset provision. In evaluating these issues, the bankruptcy court allowed discovery, accepted the parties' joint factual stipulations, and heard oral argument. Thereafter, Liberty extensively briefed the offset issue in its second appeal to the district court. Liberty availed itself of ample opportunities to contest the offset and continues to do so in this court.

*C. Priority*

We turn, then, to Liberty's priority in the Federal Judgment to help discern whether the settlement is fair and equitable. The bankruptcy court concluded that Liberty's interest was subordinate to senior interests held by Meyer's attorneys and

9

assignees, as well as the Christie parties' interest as holders of the Iowa Judgments. Liberty does not dispute the senior interests of Meyer's attorneys and assignees, but it does challenge the Christie parties' priority vis-a-vis the Iowa Judgments.

We generally look to state law to determine the priority of competing interests, *see Redmond v. Jenkins (In re Alternate Fuels, Inc.)*, 789 F.3d 1139, 1147 (10th Cir. 2015), mindful that "the lien first in time is first in right," *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 720 (1979) (internal quotation marks omitted). In Kansas, upon service of a garnishment order, a garnishor of intangible property attaches "[a]ll intangible property, funds, credits, or other indebtedness belonging to or owing the judgment debtor . . . due from the garnishee to the judgment debtor at the time of service of the order." Kan. Stat. Ann. § 60-732(c)(1).

Our mandate confirming the Federal Judgment entered on April 25, 2011. The Christie parties acquired the Iowa Judgments on April 29, May 2, May 4, and May 18. Liberty served its garnishment orders on May 16 and May 19, attaching the Federal Judgment. But on May 31, Christie answered the garnishment orders, averring that the Christie parties were not indebted to Meyer but rather Meyer was indebted to them on account of the Iowa Judgments.[2] Based on this chronology, the Iowa Judgments are senior to Liberty's garnishment liens if, at the time they were acquired, they represented a choate interest in offsetting the Federal Judgment.

---

[2] Liberty does not contend its May 16 garnishment order separately prevails against the debt acquired by the Christie parties on May 18.

On this score, Kansas law preserves a preexisting offset against a subsequent garnishment lien:

> When the garnishee claims that he or she is not indebted to the defendant for the reason that the defendant is indebted to the garnishee, or that the indebtedness due to the defendant is reduced thereby, the garnishee is not discharged unless and until he or she applies the amount of his or her indebtedness to the defendant to the liquidation of his or her claim against the defendant.

Kan. Stat. Ann. § 60-719. Moreover, a subsequent garnishment lien does not alter the relationship between the garnishee and the defendant, nor does it put the plaintiff in a better position than the defendant if the defendant had brought an identical claim directly against the garnishee:

> Proceedings in garnishment do not change the legal relations and rights existing between the defendant and the garnishee, nor place the plaintiff in a more favorable position for the enforcement of a claim against the garnishee than would be the defendant in an action brought by him for the same cause; nor can any one be held in such proceedings to the payment of a liability which the defendant could not himself enforce because of existing equities and set-offs.

*Curiel v. Quinn*, 832 P.2d 1206, 1209 (Kan. Ct. App. 1992) (internal quotation marks omitted). Under these circumstances, the garnishee bears "the burden of proving offsets or indebtedness claimed to be due from the judgment debtor to the garnishee, or liens asserted by the garnishee against personal property of the judgment debtor." Kan. Stat. Ann. § 60-738(b).

This is precisely what occurred here. The Christie parties acquired the Iowa Judgments before Liberty served its garnishment orders. Thus, when Christie answered, he averred that they owed nothing to Meyer, who was indebted to them on

11

account of the Iowa Judgments. Kansas law preserved the Christie parties' preexisting offset interest in the Federal Judgment. As a result, the bankruptcy court correctly determined their interest prevailed against Liberty's garnishment liens.

Liberty contests this conclusion, asserting the Christie parties had no lien on the Federal Judgment because they never levied on it. *See* Aplt. Br. at 34. But they never levied the Federal Judgment because they were obligated to pay it; they were the judgment debtors of the Federal Judgment and could not claim a lien on debt they owed. Liberty further contends it should be given priority because there is no absolute right to offset. Again, however, that argument attempts to circumvent the Christie parties' prior offset interest and the relevant analysis concerning the propriety of the offset.

### D. *The Settlement Agreement*

We now turn to the final issue—whether the bankruptcy court abused its discretion in approving the settlement agreement. Accounting for the duration and complexity of the litigation, the difficulty the settling parties would have collecting their judgments, and the impact of the proposed settlement, particularly in light of Liberty's priority status, the bankruptcy court determined the agreement was fair and equitable. We cannot say this was a clear abuse of discretion. Liberty insists the offset impaired its rights. But the issue is whether the settlement agreement was fair and equitable and in the best interests of the estate. In answering those questions, the bankruptcy court evaluated Liberty's priority status and concluded that its

12

garnishment liens were subordinate to the Christie parties' offset interest.  The impact on Liberty was that the proceeds of the Federal Judgment were exhausted. This does not render the agreement unfair or inequitable, particularly where it does nothing to impede Liberty's claims directly against Meyer.

III

The judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh<br>
Circuit Judge