**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 31, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

In re: MICHAEL JOSEPH ROBERTS,
SR.,

     Debtor.

------------------------------

MICHAEL JOSEPH ROBERTS, SR.,

     Appellant,

v.

HARVEY SENDER, Chapter 7 Trustee;
PDC, LLC; TIMOTHY FLAHERTY;
TIMOTHY KNEEN; RIVERIA
COUNTRY CLUB, S. DE R.L. C.V.S.,

     Appellees.

No. 25-1103
(BAP No. 24-009-CO)
(Bankruptcy Appellate Panel)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **EID** and **MURPHY**, Circuit Judges, and **TEETER**, District Judge.[**]
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Holly L. Teeter, U.S. District Judge, District of Kansas, sitting by designation.

Michael Joseph Roberts, Sr. appeals from a decision of the Bankruptcy Appellate Panel (BAP) affirming the bankruptcy court's order approving a settlement agreement between the trustee and creditors. We exercise jurisdiction under 28 U.S.C. § 158(d)(1) and affirm.

Roberts has been battling his former business partners in court over ownership and control of real estate in Mexico for close to ten years. They began in Colorado state court, where Roberts repeatedly faced setbacks and eventually had a $22.8 million award entered against him. He then tried bankruptcy court. Again, Roberts did not fare well. The bankruptcy court found that Roberts "has engaged in a level of pre-petition litigation misconduct not previously seen by this Court," converted Roberts's Chapter 11 case to Chapter 7, and appointed a trustee. *In re Roberts*, 644 B.R. 220, 231 (Bankr. D. Colo. 2022). The trustee successfully crafted a settlement designed to put an end to the state-court fight and the escalation of interest and legal fees. The bankruptcy court conducted an evidentiary hearing and approved the settlement over the objection of Roberts and his counsel. Roberts appealed to the BAP. The BAP affirmed. Roberts now appeals to this court. We find no abuse of discretion in the bankruptcy court's approval of the settlement agreement and affirm.

## I.     BACKGROUND

Both the bankruptcy court and the BAP detailed the factual background of this case. *See In re Roberts*, 667 B.R. 147 (B.A.P. 10th Cir. 2025); *In re Roberts*, No. 22-10521-JGR, 2024 WL 1460287 (Bankr. D. Colo. Mar. 28, 2024). This court need not

repeat their efforts. We therefore recount only the minimum facts necessary to frame the underlying dispute and explain why we find no abuse of discretion.

Roberts formed a Colorado limited liability company, PdC, LLC, with Timothy Flaherty and Timothy Kneen. They wanted to develop beachfront property in Mexico. But Mexico prohibits foreign companies from owning land on its coast. PdC thus formed a Mexican entity called Riviera Country Club, S. de R.L. C.V.S. ("RCC"). Roberts, Flaherty, and Kneen served as RCC's managers. RCC purchased several properties in Mexico. Roberts then fraudulently used a power of attorney to acquire a lien on two of the properties in 2016. He next attempted to foreclose on the properties for himself at the expense of PdC and RCC. The BAP astutely referred to Roberts's efforts as an attempt "to obtain the [two properties] by means of an economic coup." *In re Roberts*, 667 B.R. at 150.

Flaherty, Kneen, PdC, and RCC (eventually forming the "PdC Creditors" in the bankruptcy action) sued Roberts in Colorado state court.[1] They obtained an injunction in 2019 to stop Roberts from further misappropriating PdC property in Mexico. The Colorado state court also held Roberts in contempt, fined him, jailed him, and found in phase one of a bench trial that he had breached his fiduciary duties by fraudulently taking PdC property.

---

[1] More precisely, PdC Creditors filed cross-claims and a third-party complaint against Roberts in an existing Denver District Court lawsuit filed by a creditor against PdC Creditors. At the same time, Roberts was pursuing litigation in Mexico to secure his acquisition of the two properties and foreclose them. Neither PdC nor RCC had notice of the hearing in Mexico through which Roberts obtained the lien on the properties.

The state court scheduled phase two of the bench trial on damages. Roberts filed for Chapter 11 bankruptcy while in jail for civil contempt on the eve of the damages hearing. PdC Creditors obtained relief from the automatic bankruptcy stay. The state-court judge conducted phase two of the trial on damages and awarded PdC Creditors $22.8 million in damages and attorney's fees. The bankruptcy court found that Roberts filed bankruptcy in bad faith to relitigate the state-court judgment and converted the Chapter 11 case to a Chapter 7 case.

PdC Creditors and the Chapter 7 trustee, Harvey Sender, entered into a settlement agreement and moved the bankruptcy court to approve. The agreement includes these components (among others): (1) PdC Creditors' claim in a negotiated amount of $19 million is allowed; (2) all remaining claims by PdC Creditors are withdrawn; (3) PdC Creditors release any security or lien interest they had in property of the bankruptcy estate; (4) Sender relinquishes any appeal rights in the state-court litigation; and (5) judgment be entered in the state-court case in the amount of PdC Creditors' allowed claim. Roberts and his attorney Robert Podoll objected to the motion. No other creditors objected.

The bankruptcy court conducted an evidentiary hearing that spanned two days, and it held closing argument on a third day. The bankruptcy court heard testimony from five witnesses; the parties moving to approve the settlement presented three and the objectors presented two. PdC's Chief Financial Officer Carl Vertuca, Sender, and expert Carolyn Fairless testified for the movants. Flaherty and expert Stanley Garnett testified for the objectors. Roberts did not testify.

4

The bankruptcy court found the testimony of Vertuca to be credible, knowledgeable, and unbiased. It found the testimony of Sender to be credible and reflecting "a business-like approach to the resolution of this case." And it found the testimony of Fairless to be credible, studied, and persuasive. The bankruptcy court discounted and disregarded the opinion of Garnett and found Flaherty's testimony irrelevant.[2] The bankruptcy court ultimately approved the agreement and found that the compromise was fair, reasonable, and in the best interests of the estate.

## II.    STANDARD

We review a bankruptcy court's approval of a settlement agreement for abuse of discretion. *Reiss v. Hagmann,* 881 F.2d 890, 891-92 (10th Cir. 1989). This court will affirm unless the bankruptcy court's decision achieves an uninformed, unjust result not based on an "objective evaluation of developed facts." *Id.* We review independently the bankruptcy court's decision even when the appeal is from the BAP's decision. *In re Amerson*, 839 F.3d 1290, 1298 (10th Cir. 2016). We do not defer to the BAP opinion. *Id.* But it may be (and often is) persuasive. *Id.*

## III.    ANALYSIS

Roberts asserts six issues. But his six issues are mostly varied ways of trying to relitigate matters extraneous to this court's review of the bankruptcy court's approval of the settlement agreement. A reviewing court need not track every sub-

---

[2] Flaherty's testimony is about nine pages of transcript. Podoll tried to discuss litigation in Mexico with him and represented that his questions to Flaherty were relevant to "the essence of the breach of fiduciary duty claim" and the appellate rights relating to that claim. Appt. App'x 1388.

issue that a litigant presents. *See In re Armstrong*, 99 F. App'x 210, 213, 213 n.1 (10th Cir. May 27, 2004). And here, the central question is singular: whether the bankruptcy court abused its discretion when it approved the settlement agreement. It did not. We explain why before briefly noting the other issues Roberts raises.

### A.    Review of Settlement Agreement.

A Chapter 7 trustee may enter compromises or settlements to be approved by the court. *See* Fed. R. Bankr. P. 9019. Settlement is favored. *Kearney v. Unsecured Creditors Comm.*, 987 F.3d 1284, 1295 (10th Cir. 2021). A bankruptcy court deciding whether to approve a settlement examines whether the settlement is "fair and equitable and in the best interests of the estate." *In re Rich Glob., LLC*, 652 F. App'x 625, 631 (10th Cir. 2016). At its core, this means the court decides whether the settlement "falls below the lowest point in the range of reasonableness." *Id*. (citation omitted). Courts use four factors, known as the "*Kopexa* factors," to analyze an agreement: (1) the underlying litigation's probable success on the merits; (2) possible judgment-collection difficulties; (3) the litigation's complexity and expense; and (4) creditors' interests. *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997).[3]

---

[3] The Tenth Circuit has not adopted the *Kopexa* factors in a published opinion. But at least one unpublished decision has approved of their use as a tool to evaluate approval of settlement agreements. *See, e.g.*, *In re Armstrong*, 99 F. App'x at 213. And both published and unpublished decisions have observed their use without criticism. *See, e.g.*, *Kearney*, 987 F.3d at 1289-90, 1294-95; *In re Rich Glob.*, 652 F. App'x at 631.

The bankruptcy court conducted a robust evidentiary hearing on the motion to approve the settlement agreement. It entered a nineteen-page order after hearing evidence and reviewing the record. The order thoroughly laid out the history of the relationships and properties and how Roberts fraudulently used a power of attorney to personally acquire liens on two of the properties and foreclose on them. The bankruptcy court reviewed the state-court litigation and Roberts's (bad) behavior in that litigation. It addressed the bankruptcy litigation and how Roberts's behavior led to relief for PdC Creditors from the bankruptcy stay and a conversion to a Chapter 7 case. And the bankruptcy court discussed at length the terms of the settlement agreement, the testimony presented at the hearing, and the credibility assessments of the witnesses.

The bankruptcy court correctly set forth the governing law and appropriately noted that it did not need to "decide the numerous issues of law and fact raised by a compromise or settlement, but must only canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Roberts*, 2024 WL 1460287, at *13 (citation and internal quotation marks omitted). It applied the *Kopexa* factors and concluded the following weighed in favor of approving the settlement agreement: (1) a state-court appeal's low probability of success; (2) the complexity and expense of the state-court case, noting it was Roberts's conduct that caused the complexity; (3) Podoll was the only creditor who objected; (4) Roberts and Podoll desired "to litigate ad infinitum"; and (5) counsel for Roberts was so "hopelessly conflicted" that the bankruptcy court had "a hard time believing anything

7

they say." *Id.* at *17-18. The bankruptcy court specifically determined that the agreement was fair and equitable and in the best interests of the estate, and it noted:

> The end of the state court litigation ends nearly a decade-long litigation, accompanied by an explosion of attorney's fees by both sides. The judgment is accruing interest at the rate of $1.5 million a year. The Agreement puts an end to both when the Trustee, as owner of the appellate rights, stipulates to the Denver District Court judgment.

*Id.* at *14.

The bankruptcy court observed that one primary purpose of the settlement agreement is to resolve the state-court litigation, which it described as "litigation where every motion, hearing, or trial has been hotly contested." *Id.* at *15. It then discussed the many reasons why Roberts's probability of success on state-court appeal to be negligible. Specifically, Roberts "lost at every step of the way and was harshly sanctioned." *Id.* It noted that Roberts has failed on all nine of his challenges to the judgment. The bankruptcy court also recounted multiple instances showing "Roberts's lack of credibility and flagrant disregard of prior court orders." *Id.* The instances are all supported by the record. And Fairless provided a thorough analysis with concrete reasoning on why she believed an appeal had a low chance of success. Garnett, on the other hand, offered only summary conclusions. The bankruptcy court acted within its discretion when it discounted Garnett's report and testimony.

The bankruptcy court focused much of its analysis on the probability of success on appeal but also addressed the other *Kopexa* factors. It reasoned that the possibility of difficulty in collecting a judgment was not a relevant factor for this

case. It noted that the complexity and expense of the litigation weighed in favor of approving the settlement. In support, it cited the "cross-jurisdictional nature, continued litigation, unwillingness to settle, ballooning attorney's fees, and complex issues." *Id.* at \*17. And finally, the bankruptcy court observed that the only objecting creditor is Podoll, which it characterized as "hopelessly conflicted" and hard to believe. *Id.* at \*18. These observations were within the bankruptcy court's broad discretion.

This court does not disturb a bankruptcy court's approval of a compromise unless it is uninformed, unjust, and not based on an "objective evaluation of developed facts." *Reiss*, 881 F.2d at 891-92. Here, the compromise approval is informed, just, and based on a thorough and objective evaluation of developed facts. Simply put, the bankruptcy court did not abuse its discretion in approving the agreement. It scrupulously examined the evidence and considered whether the settlement was fair and equitable and in the best interests of the estate. It considered the *Kopexa* factors and found the agreement fair and reasonable. In reviewing the *Kopexa* factors, the bankruptcy court's role was <u>not</u> to act in an appellate capacity and engage in detailed analysis of each of the potential appellate issues. It was only tasked with considering Roberts's probability of success. And its findings are wholly consistent with our own review of the record. We are confident that the bankruptcy court closely reviewed the record, weighed the evidence, applied the *Kopexa* factors, and reached a conclusion that was well within the bounds of its discretion.

9

### B.     Roberts's Other Issues Presented.

We could end our opinion here. But to assure Roberts that we have fully and fairly considered his appeal, and to note one argument in particular that we reject, we briefly discuss the remaining issues. Specifically, we address (1) whether Sender could give up state-court appellate rights in the settlement agreement (yes); (2) whether the bankruptcy court improperly allowed PdC Creditors' claim because it was not cognizable, had no provable damages, and was subject to un-litigated defenses (no); (3) whether the bankruptcy court was required to rule Roberts's objections before approving the settlement agreement (no); and (4) whether the bankruptcy court erred when it concluded that PdC Creditors' defenses were not barred by the doctrines of comity and res judicata (no).[4]

**Ownership of State-Court Appellate Rights.** First, Roberts contends that Sender had no authority to give up his state-court appellate rights in the settlement agreement. He argues that those rights belong to him and do not belong to the estate. Roberts's arguments on this issue are unpersuasive. Both federal and state law are relevant to this question. A debtor's interest in property is governed by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Whether that property is part of the bankruptcy estate is governed by federal law. *See generally* 11 U.S.C. § 541(a)(1) (defining the debtor's estate).

---

[4] Roberts identified six issues for appeal. We already have addressed his contention that the bankruptcy court abused its discretion in finding Roberts had a negligible chance of prevailing on appeal. It falls within our analysis why the settlement approval was not an abuse of discretion.

The Colorado Court of Appeals has held that a debtor's appeal rights become the property of the bankruptcy estate once a debtor files for bankruptcy. *See In re Marriage of Yates*, 148 P.3d 304, 314 (Colo. App. 2006) (holding that husband lacked standing to challenge division of marital property when he filed bankruptcy petition after appeal because the appellate rights became the property of the trustee). Roberts claims this issue is different because <u>defensive</u> appellate rights are not the same. He contends *Yates* is distinguishable because the marital-property division was an affirmative <u>claim</u> by the husband-debtor. Roberts asserts that defensive appellate rights, in contrast, are not a "chose in action" under Colorado law because they do not constitute the "right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected to a contract, but which cannot be enforced without action." *AA Wholesale Storage, LLC v. Swinyard*, 488 P.3d 1213, 1216 (Colo. App. 2021). Roberts reasons that a chose in action is property in Colorado while defensive appellate rights are not property.

We disagree that the Colorado Supreme Court would so find. Colorado courts define property broadly. "Property" in Colorado includes "everything that has an exchangeable value or which goes to make up wealth or estate." *In re Marriage of Graham*, 574 P.2d 75, 77 (Colo. 1978) (quoting Black's Law Dictionary 1382 (rev. 4th ed. 1968)). The definition does not mention or limit itself to a chose in action. Texas law uses a similarly broad definition. *See In re Croft*, 737 F.3d 372, 375 (5th Cir. 2013) (noting that Texas law defines property to include "every species of valuable right and interest"). The Fifth Circuit applied Texas's definition to find that

11

defensive appellate rights were the property of the estate. *Id.* at 375-78. And the Central District of California reached the same conclusion when considering California law. *In re Mozer*, 302 B.R. 892, 896 (C.D. Cal. 2003) ("The right to appeal is valuable in nature and is the property of the bankruptcy estate under California's broad concept of property rights."); *see also In re Bouzaglou*, No. 2:14-AP-01645-DS, 2018 WL 4062299, at *7 (B.A.P. 9th Cir. Aug. 13, 2018), *aff'd*, 803 F. App'x 147, 148 (9th Cir. 2020) (determining that defendant-debtor against whom a state-court judgment had been entered relinquished his appellate rights by filing a Chapter 7 bankruptcy case). *But see In re Morales*, 403 B.R. 629, 632-33 (Bankr. N.D. Iowa 2009) (finding defensive appellate rights not assets of the bankruptcy estate).[5]

We agree with the reasoning of *In re Croft* and *In re Mozer* that defensive appellate rights constitute both a right and an interest with exchangeable value, rendering them property under Colorado law. They constitute a right because they give a party the unilateral ability to invoke the court system. And they constitute a valuable interest, as Roberts cannot contest; they represent a quantifiable value to him as is evidenced by his actions in this case. Roberts may not have a legal interest in the claims against him for fraud and breach of fiduciary duty. But it cannot be

---

[5] Roberts urges this court to adopt the reasoning of *In re Morales*. We decline to do so. The *In re Morales* court held that the nature of an appellate right depends on the nature of the underlying judgment. 403 B.R. at 633. *In re Morales* also expressed concern that allowing transfer of defensive appellate rights to the estate would "effectively destroy" the debtor's right to object to a creditor's claim. *Id.* at 633-34. This concern is not present here; Roberts has been afforded more than ample opportunity to object to PdC Creditors' claims.

questioned that he has a legal interest in any assets ultimately used for judgment-satisfaction. He also has a legal interest in minimizing the damage to this interest. We determine that Colorado would recognize defensive appellate rights as property. And, therefore, under federal bankruptcy law, they were properly included as part of the estate that the trustee could agree to dismiss as part of the settlement. Roberts's argument to the contrary is unpersuasive.

**Unlitigated Defenses.** Second, Roberts suggests that he has not had a full opportunity to litigate his defenses to PdC Creditors' claims. Roberts is incorrect. He has, in fact, had multiple opportunities to litigate his defenses. The bankruptcy court went to great lengths to review the history of the litigation and his defenses. And it also reviewed Fairless's report, where she detailed the various defenses Roberts has raised over the course of the litigation, as well as their outcome and chances of success on appeal. It is beyond the scope of review for the bankruptcy court or this court to essentially conduct another trial on Roberts's defenses. *See In re Rich Glob.*, 652 F. App'x at 631. The bankruptcy court was required to "review the issues and determine whether the settlement falls below the lowest point in the range of reasonableness." *Id.* (quoting 8 NORTON BANKRUPTCY LAW & PRACTICE § 167.2). That is what it did.

**Resolution of Objections.** Third, Roberts asserts the bankruptcy court failed to resolve his objections to PdC Creditors' claims and therefore was without authority to approve the settlement agreement. This argument is both disingenuous and incorrect. Roberts made the same objections to PdC Creditor's claim as he did to

13

the settlement agreement. As the bankruptcy court found, the claims objections "contain[] identical arguments to the arguments this Court heard during the hearing on the motion to approve the settlement agreement." Appt. App'x 1608. The BAP aptly noted that the claims "objections filed by Roberts and Podoll reveal them to be little or nothing more than a rehash of every reason why they could prevail on appeal in the State Court Litigation and thereby eviscerate the claims of the PdC Creditors." *In re Roberts*, 667 B.R. at 152.

We also agree with the BAP, who cited *In re DVR, LLC*, 606 B.R. 80 (D. Colo. 2019), for the proposition that a bankruptcy court need not always resolve a claim objection before it approves a settlement agreement. A bankruptcy court may be required to resolve a claim objection that involves an individual right of the objecting creditor (i.e., a dispute over competing lien rights). *See In re DVR*, 606 B.R. at 84-87. But this is different from an objection that disputes a creditor's entitlement to distribution, which is the nature of Roberts's objections here. Our court has also recognized in an unpublished opinion the distinction made in *In re DVR* about the types of objections that must be resolved. *In re Fog Cap. Retail Invs. LLC*, No. 22-1297, 2024 WL 659559, at *6 (10th Cir. Feb. 16, 2024). In that case, we held that a bankruptcy court did not need to resolve objections before approving a settlement where no individual property rights such as lien rights were at issue. *Id.* The objections at issue here likewise do <u>not</u> involve the individual rights of Roberts or Podoll. They are nothing more than a rehashing of Roberts's arguments why he

would prevail on appeal. These rights now belong to Sender. Roberts's argument to the contrary does not hold water.

**Comity and Res Judicata.** Finally, Roberts wants this court to again consider his defenses of comity and res judicata. He is not entitled to another bite at the apple. The bankruptcy court addressed these arguments after Fairless discussed them in her report and during the hearing. Both of these arguments rise or fall on Roberts's contention that the foreclosure-like suit he brought in Mexico precluded the Colorado state court from hearing PdC Creditors' claims for breach of fiduciary duty and fraud and precluded the $22.8 million damages award against Roberts. Fairless explained why she concluded neither of Roberts's arguments was likely to win an appeal. And the bankruptcy court evaluated Fairless's testimony and found it well-reasoned and credible. This argument, like Roberts's others, does not change the outcome of this case.

## IV.   CONCLUSION

The bankruptcy court did not abuse its discretion in approving the settlement agreement. We AFFIRM the decision of the bankruptcy court.

Entered for the Court


Holly L. Teeter
U.S. District Judge