FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

December 4, 2019

Blaine F. Bates
Clerk

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE VICTOR P. KEARNEY,

Debtor.

_____

VICTOR P. KEARNEY,

Appellant,

v.

KEVIN YEAROUT, UNSECURED
CREDITORS COMMITTEE, UNITED
STATES TRUSTEE, and LOUIS
ABRUZZO and BENJAMIN ABRUZZO,
Trustees of the Mary Pat Abruzzo Kearney
Testamentary Trusts B and C,

Appellees.

BAP No. NM-19-010

Bankr. No. 17-12274
Chapter 11

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of New Mexico

_____

Before **CORNISH**, **ROMERO**, and **LOYD**,** Bankruptcy Judges.

_____

**LOYD**, Bankruptcy Judge.

---

* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.
** Honorable, U.S. Bankruptcy Judge, United States Bankruptcy Court for the Western District of Oklahoma, sitting by designation.

_____

Chapter 11 debtor Victor Kearney appeals the New Mexico Bankruptcy Court's order confirming the chapter 11 plan of reorganization proposed by the unsecured creditors' committee in his case. Determining the Bankruptcy Court did not err in confirming the plan of reorganization we AFFIRM.

## I.      Factual Background

Victor Kearney (the "Debtor") married Mary Pat Abruzzo in 1988. Mary Pat's parents developed and ran a ski resort and tramway near Albuquerque, New Mexico. The Abruzzo's operated the ski resort and tramway under a company called Alvarado Realty Company. Mary Pat and her three brothers, Louis, Benny, and Richard Abruzzo managed Alvarado Realty Company since their parents' deaths in 1985.

Mary Pat owned approximately 18.5 percent of Alvarado Realty Company's stock. Mary Pat died in 1997 at the age of 31. Her will set up two testamentary trusts for the benefit of her brothers and the Debtor during his lifetime (the "Trusts"). The Trusts contained a spendthrift provision preventing the Debtor from assigning his interest in the Trusts' assets to creditors. Upon the Debtor's death, the remainder in the Trusts was to be divided between Louis, Benny, and Richard Abruzzo, or their surviving children. Richard died in 2010. Mary Pat's will appointed Louis, Benny (the "Brothers"), and the Debtor as co-trustees of the Trusts.

Over the years, the Trusts distributed approximately $800,000 per year or $16,000,000 total to the Debtor. However, the Debtor and the Brothers did not have a good relationship. Eventually in 2013, the Debtor sued the Brothers for breach of

2

fiduciary duty as co-trustees of the Trusts in New Mexico state court. The Debtor alleged

the Brothers suppressed Alvarado Realty Company's dividend payments to the Trusts to

his detriment as a beneficiary. The Brothers counterclaimed, alleging the Debtor

breached his fiduciary duty as a co-trustee and asked the state court to modify the Trusts

to appoint a successor trustee to replace the Debtor.

At the conclusion of a trial on the Debtor's claims, the state court denied all of the

Debtor's allegations and ordered him to pay the Brothers $510,000 in attorneys' fees and

$155,915.60 in costs. The state court also sanctioned the Debtor $100,000, finding he lied

under oath, failed to comply with discovery orders, and otherwise acted in a manner

amounting to an affront to the entire judicial process.

The state court conducted a separate trial on the Brothers' counterclaims at which

it determined the Debtor breached fiduciary duties owed to them as co-trustees and

ordered that the Debtor be replaced as a co-trustee of the Trusts. The Debtor filed his

chapter 11 bankruptcy petition on September 1, 2017, the day before the state court

hearing on the appointment of a trustee to replace the Debtor.

The U.S. Trustee's office appointed an unsecured creditors' committee (the

"Committee") on November 22, 2017. The Committee is made up of Brenda Johnson,[1]

Nick Tarlson,[2] and Betty and Clayton White.[3] The Bankruptcy Court extended the

---

[1] Ms. Johnson is the Debtor's former assistant and is a creditor in the amount of $310,869 by way of two unsecured promissory notes.
[2] Mr. Tarlson is an accountant asserting a claim of $84,829 for professional fees.
[3] The Whites assert a claim of $123,476 by way of two promissory notes secured by a 10% interest in a now defunct limited liability company.

3

Debtor's exclusivity period until June 12, 2018. The Debtor filed his third amended plan of reorganization on July 13, 2018. The Debtor then amended his plan of reorganization on August 13, 2018, August 29, 2018, November 16, 2018, and January 22, 2019.

When the Debtor filed his fifth amended plan of reorganization, he sought a further extension of the exclusivity period. The Bankruptcy Court denied the extension of the exclusivity period, opening the door for the Committee to file a competing plan of reorganization. The Committee filed a plan on July 12, 2018 and amended its plan on November 7, 2018. The Debtor proposed his seventh and final plan just nine days before the scheduled hearing on the Debtor's sixth amended plan and the Committee's amended plan.

The Committee's amended plan provided funding from the Trusts' assets pursuant to the state court's modification of the Trusts. The Committee's plan authorized Alvarado Realty Company[4] to purchase back shares of the company held by the Trusts for $12,571,799; paid a $3,000,000 distribution of the Trusts' assets to the Debtor, to be turned over to the bankruptcy estate in settlement of all claims held by the estate against

---

[4] Alvarado Realty Company is a creditor in the bankruptcy case, asserting a claim of $184,503 for sanctions or compensatory losses for the Debtor's violation of a protective order in the state court matter.

the Brothers and Alvarado Realty Company; and paid the priority tax claim of the IRS over five years from net income otherwise distributable to the Debtor.[5]

The Bankruptcy Court granted relief from the automatic stay to pursue state court approval of the modification of the Trusts. One day before the state court was to hear the matter, the Debtor removed the action to federal district court for the District of New Mexico, alleging diversity of citizenship. The District of New Mexico transferred the matter back to the Bankruptcy Court, concluding the attempt to remove the matter was a sham litigation tactic. The Bankruptcy Court determined it must abstain from issuing a ruling on modification of the Trusts and remanded the matter back to the state court. The state court approved the modification of the Trusts to allow for the sale of the Trusts' assets to Alvarado Realty Company and the $3,000,000 payment to the bankruptcy estate (the "Trust Modifications").

Upon the sale of the Trusts' assets to Alvarado Realty Company, the Committee's plan provided for the creation of a new trust, the trustee of which would hold and distribute payments to creditors. The Committee's plan provided that priority claims would be paid in full, all collateral encumbered by secured claims would be surrendered, and the unsecured claims would receive a pro rata distribution out of the $3,000,000 payment. Additionally, the Committee's plan provided the Debtor would release any

---

[5] The Debtor refers to these three provisions of the plan and subsequent state court involvement as the "Three Actions." Appellant's Br. 8.

claims he held against the Brothers, Alvarado Realty Company, and any other members of the Abruzzo family.

At the confirmation hearing, the Bankruptcy Court refused to allow the Debtor to go forward with his seventh amended plan, concluding creditors did not receive sufficient notice of the plan's amendments because it was filed on January 22, 2019, and the hearing occurred on January 31, 2019. The Committee and objecting creditors Wells Fargo Bank, N.A., the IRS, the New Mexico Taxation and Revenue Department, and US Bank resolved all objections to the Committee's plan by stipulation. The Bankruptcy Court found the Committee's plan was proposed in good faith and was feasible, as the evidence suggested Alvarado Realty Company had sufficient funds and access to credit to complete the $12,600,000 purchase of the Trusts' shares in the company. The Committee members all testified they believed they would receive a higher payout on their claims under the Committee's plan than by any plan proposed by the Debtor. The Bankruptcy Court confirmed the Committee's plan over the Debtor and his ex-wife's objections. The Debtor filed a timely notice of appeal.

## II.    Jurisdiction & Standards of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of Bankruptcy Courts within the Tenth Circuit."[6] An order confirming a chapter 11 plan of reorganization is final for the

---

[6]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

purposes of appeal.[7] Neither party in this case elected for this appeal to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

The Debtor argues the Bankruptcy Court deprived him of due process by denying review of his seventh amended plan and denying discovery related to the Committee's plan. Whether the Bankruptcy Court denied a party of his or her due process rights is a question of law reviewed *de novo*.[8] The Debtor also argues the Bankruptcy Court erred in confirming the Committee's plan as it lacked good faith and was not feasible and improperly settled the Debtor's claims against the Brothers. "Good faith for purposes of § 1129(a)(3) is ordinarily a finding of fact that we review for clear error."[9] A finding of fact is clearly erroneous if "it is without factual support in the record or if, after reviewing all of the evidence, [the court is] left with the definite and firm conviction that a mistake

---

[7]     *In re Novinda Corp.*, 585 B.R. 145, 151 (10th Cir. BAP 2018) (citing *Interwest Bus. Equip., Inc.*, 23 F.3d 311, 315 (10th Cir. 1994)).

[8]     *In re C.W. Mining Co.*, 625 F.3d 1240, 1244 (10th Cir. 2010) (citing *In re Gledhill*, 76 F.3d 1070, 1083 (10th Cir. 1996)).

[9]     *In re Paige*, 685 F.3d 1160, 1178 (10th Cir. 2012) (citing *In re 203 N. LaSalle St. P'ship*, 126 F.3d 955, 969 (7th Cir. 1997)).

has been made."[10] Whether a plan is feasible pursuant to § 1129(a)(11) is also a finding of fact reviewed for clear error.[11]

Approval of a settlement agreement is reviewed for abuse of discretion.[12] The abuse of discretion standard requires the appellate court to give deference to the trial court's "evaluation of the salience and credibility of testimony, affidavits, and other evidence. We will not challenge that evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record."[13]

### III.    Analysis

#### a.  Whether the Bankruptcy Court violated the Debtor's due process rights

The Debtor argues the Bankruptcy Court denied him of his due process rights to make an argument and establish a record by (1) denying the Debtor's request to hold a confirmation hearing on his seventh amended plan; and (2) denying the Debtor the opportunity to conduct discovery on his objections to the Committee's plan.

"[D]ue process requires notice and a meaningful opportunity to be heard."[14] Notice must be "reasonably calculated, under all the circumstances, to apprise interested

---

[10]  *In re Ford*, 492 F.3d 1148, 1154 (10th Cir. 2007) (quoting *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002)).

[11]  *In re Paige*, 685 F.3d at 1187 (citing *In re Harbin*, 486 F.3d 510, 517 (9th Cir. 2007)).

[12]  *In re Rich Glob., LLC*, 652 F. App'x 625, 630 (10th Cir. 2016) (unpublished) (quoting *Reiss v. Hagmann*, 881 F.2d 890, 891-92 (10th Cir. 1989)).

[13]  *United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir. 1994).

[14]  *In re C.W. Mining Co.*, 625 F.3d 1240, 1244 (10th Cir. 2010) (citing multiple cases for this proposition).

parties of the pendency of the action and afford them an opportunity to present their objections."[15] The opportunity to be heard must be "at a *meaningful* time and in a *meaningful* manner."[16] The Federal Rules of Bankruptcy Procedure[17] provide a party must provide creditors with twenty-eight days' notice of the time for filing objections to and date of the hearing on confirmation of a chapter 11 plan.[18]

The Debtor asserts the Bankruptcy Court erred by denying him the chance to proceed with his seventh amended plan at the January 31, 2019 confirmation hearing. However, the Debtor did not serve notice of his intent to file the seventh amended plan until January 22, 2019, only ten days before the confirmation hearing.[19] The Debtor failed to provide creditors and parties in interest with the required twenty-eight-days' notice of a confirmation hearing. While the Debtor argues the amendments to the plan were based on the Bankruptcy Court's concerns with his sixth amended plan, he was not excused from providing the required twenty-eight-days' notice.

The Debtor does not argue he lacked notice of the confirmation hearing or that the Bankruptcy Court deprived him of a meaningful opportunity to have his objections heard. Instead, the Debtor argues the Bankruptcy Court improperly limited the duration and

---

[15]    *In re Barton Indus.*, 104 F.3d 1241, 1245 (10th Cir. 1997) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

[16]    *In re C.W. Mining, Co.*, 625 F.3d at 1245 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[17]    All references to Rule or Rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[18]    Fed. R. Bankr. P. 2002(b).

[19]    *Notice of Debtor's Intent and Plan Amendment*, *in* Appellant's App. at 1662.

scope of depositions of Alvarado Realty Company's principals.[20] The Debtor argues the discovery rulings limited his ability to properly litigate objections to the Committee's plan. The Tenth Circuit provides

> an "inquiry into whether a party had a full and fair opportunity to litigate an issue often . . . will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."[21]

The Debtor's interest in the Trusts and discharge provided him with incentive to litigate, he was represented by counsel at the confirmation hearing and was able to call witnesses, cross-examine witnesses, and present other evidence.[22] Although the relationship between the Debtor and the Brothers was at the least strained at this point, the Bankruptcy Court did not prevent the Debtor from deposing Alvarado Realty Company's principals but only limited the scope to confirmation issues. The Debtor points to no other procedural limitations imposed by the Bankruptcy Court. Accordingly, he has failed

---

[20]    The Debtor references the *Order Granting in Part and Denying in Part the Abruzzo Trustees' Motion for Protective Order and Motion to Quash Notice of Deposition* and the *Order on Debtor's Emergency Motion to Compel Deposition and Discovery Responses from ARCO*. Appellant's App. at 1493, 1722.

[21]    *Salguero v. City of Colvis*, 366 F.3d 1168, 1174 (10th Cir. 2004) (quoting *Murdock v. Ute Indian Tribe of Unitah & Ouray Reservation*, 975 F.2d 683, 689 (10th Cir. 1992)).

[22]    *See Atiya v. Salt Lake Cty.*, 988 F.2d 1013, 1019 (10th Cir. 1993) (holding a plaintiff had an opportunity to litigate at a hearing where she was represented by counsel, made opening and closing statements, called and cross-examined witnesses, and introduced evidence).

to convince the Court that the Bankruptcy Court deprived him of the opportunity to litigate his confirmation objections or otherwise violated his due process rights.

### b. The Committee's plan did not violate § 1129(a)(3)

*The Committee's plan was proposed in good faith*

The first requirement of § 1129(a)(3) mandates that a plan of reorganization be proposed in good faith. Recognizing the Bankruptcy Code does not define good faith, the Tenth Circuit advises "the test of good faith under § 1129(a)(3) focuses on whether a plan is likely to achieve its goals and whether those goals are consistent with the Code's purposes."[23] "[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a 'new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'"[24]

The Debtor argues allowing the state court to consider the Trust Modifications in effect removed the issue of good faith from the Bankruptcy Court's purview. However, the Debtor does not assert the Bankruptcy Court erred in abstaining from considering the Brothers' requests to modify the Trusts and remanding the matter to the state court.[25] In its opinion and order remanding the Trust Modifications to the state court, the Bankruptcy Court delivered a lengthy analysis of the statutory framework regarding

---

[23] *In re Paige*, 685 F.3d 1160, 1179 (10th Cir. 2012).

[24] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

[25] *Opinion*, *in* Appellant's App. at 3452.

mandatory abstention.[26] The Bankruptcy Court concluded 28 U.S.C. § 1334 was the sole basis for federal jurisdiction but concluded it was required to abstain from hearing the modification issues pursuant to 28 U.S.C. § 1334(c)(2).[27] The Debtor does not contend the Bankruptcy Court erred in abstaining and we decline to address the issue.

The Bankruptcy Court found the Committee's plan to be in the Debtor's best interest as it discharged his liabilities, eliminating more than $8,600,000 in debt in exchange for payment of $3,000,000. The Bankruptcy Court's findings that the "Debtor can live post-bankruptcy with a fresh start" are in line with the central purposes of the Bankruptcy Code.[28] The Bankruptcy Court allowed the Debtor to propose at least six plans of reorganization in the year and a half since the petition date. The Debtor's proposed plans failed to garner enough creditor support to proceed with a confirmation hearing. Faced with the prospect of allowing the Debtor to further delay confirmation or

---

[26]     *Id.* at 3, *in* Appellant's App. at 3454 (quoting 28 U.S.C. § 1334(c)(2)).

[27]     Although 28 U.S.C. § 1334(d) provides a decision to abstain is not reviewable by appeal to the court of appeals, this Court previously held it is not a "court of appeals" as referenced in 28 U.S.C. § 1334. *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 768 (10th Cir. BAP 1997) ("[T]his Court is not the court of appeals referenced in sections 1334(c)(2) [the prior version of 1334(d)] and 1452(b).") Thus, the Court is not automatically precluded from considering an appeal of a decision made under 28 U.S.C. § 1334(c).

[28]     *Opinion* at 17, *in* Appellant's App. at 367.

confirm a plan proposed by the Committee, it does not appear the Bankruptcy Court erred

in confirming the Committee's plan.

*The Committee's plan was not proposed by means forbidden by law*

The Debtor argues the Bankruptcy Court erred in finding the Committee's plan

was proposed in good faith and not by means forbidden by law as required by

§ 1129(a)(3). The Debtor argues the Committee's plan violated § 541(c)(2)'s exclusion of

spendthrift trusts from the bankruptcy estate; New Mexico law preventing creditors from

accessing property held in spendthrift trusts; and the principle that property rights in

bankruptcy should be the same as outside of bankruptcy.

The New Mexico Uniform Trust Code provides "a creditor . . . may not reach the

interest or a distribution by the trustee before its receipt by the beneficiary."[29] The

Bankruptcy Court concluded the Committee's plan did not violate the New Mexico

Uniform Trust Code because the Trusts were modified by the state court and the

modification of the Trusts' terms allowed for bypassing the spendthrift provision.[30] The

state court ordered that the language of the Trusts be modified to state: "The Trustees are

authorized on a one-time basis to distribute $3 million of principle to Kearney if the

---

[29]     N.M. Stat. § 46A-5-502 (1978).
[30]     *Opinion* at 16, *in* Appellant's App. at 366. There was much litigation over the Trust Modifications. The Bankruptcy Court granted the Committee stay relief to have the state court consider the proposed modifications. The Debtor removed that proceeding to federal district court. The District of New Mexico court transferred the proceeding to the Bankruptcy Court, concluding the Debtor was employing gamesmanship to avoid a ruling by the Bankruptcy Court. *Opinion* at 7, *in* Appellant's App. at 3458. Once the proceeding was back before it, the Bankruptcy Court concluded the requirements for mandatory abstention were met and that it was required to abstain from ruling on the matter. *Id.*, *in* Appellant's App. at 3458.

13

[Committee's p]lan is confirmed by a Final Order of the Bankruptcy Court."[31] Based on the Trust Modifications, the Committee's plan complied with New Mexico law and the applicable provisions of the Bankruptcy Code. Accordingly, the Bankruptcy Court did not err in finding the Committee's plan was proposed in good faith and not by means forbidden by law.[32]

### c. The Committee's plan did not violate § 1129(a)(11)

The Debtor argues that the Committee's plan is not feasible despite receiving the state court's approval to modify the Trusts because it is dependent on the state court's ruling, which is on appeal to the New Mexico Court of Appeals. The Debtor states that plans based on the outcome of speculative or uncertain litigation are not feasible.[33] The

---

[31] *Court's Findings of Fact and Conclusions of Law and Order Related Thereto* at 15, *in* Appellant's App. at 2931.

[32] Some caselaw suggests that § 1129(a)(3)'s "not by any means forbidden by law" language "bars confirmation of plans *proposed* in violation of law, not those that contain terms that may contravene law." *In re Ocean Shores Cmty. Club, Inc.*, 944 F.2d 909, 1991 WL 184827 at *2 (9th Cir. Sept. 19, 1991) (unpublished) (emphasis added) (citing *In re Sovereign Grp., 1984-12 Ltd.*, 88 B.R. 325, 328 (Bankr. D. Colo. 1988)); *In re 20 Bayard Views, LLC*, 445 B.R. 83, 96 (Bankr. E.D.N.Y. 2011) ("the requirement of Section 1129(a)(3) 'speaks more to the process of plan development than to the content of the plan.'" (quoting *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010))). As the Debtor's argument pertains to the terms of the plan's violation of New Mexico trust law and the Committee's plan as confirmed did not violate state law, we do not address the issue.

[33] Appellant's Br. 37-38 (citing numerous cases for the proposition).

14

Debtor argues that if the state court's modification order is overturned on appeal, the Committee's Plan will never become effective.

A plan is feasible under § 1129(a)(11) "when it is not likely to be followed by liquidation or further financial reorganization."[34] "[A] feasible plan is not a guarantee of success but rather offers a reasonable assurance of success."[35] The feasibility analysis requires a Bankruptcy Court to "evaluate the possible impact of the debtor's ongoing civil litigation."[36] Indeed, "[a] plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely,"[37] However, this Court has held that where the primary source of funding of a plan is not contingent on speculative litigation, a Bankruptcy Court's finding of feasibility is not in error.[38]

In support of his argument, the Debtor cites numerous cases for the proposition that plans based on the uncertain outcome of litigation are not feasible. While the speculative outcome of potential litigation intended to fund plan payments may render a plan unfeasible, the Bankruptcy Court found the outcome of the state court litigation is

---

[34]     *In re Gentry*, 807 F.3d 1222, 1225 (10th Cir. 2015) (citing *In re Inv. Co. of the S.W., Inc.*, 341 B.R. 298, 310 (10th Cir. BAP 2006)).
[35]     *Id.* (citing *In re Ames*, 973 F.2d 849, 851 (10th Cir. 1992)).
[36]     *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) (quoting *In re Harbin*, 486 F.3d 510, 519 (9th Cir. 2007)).
[37]     *In re Am. Capital Equip., LLC*, 688 F.3d at 156 (finding plan that required asbestos tort plaintiffs to settle claims and consent to a surcharge of the debtor's insurance recovery for benefit of other creditors was not feasible because the asbestos plaintiffs were not required to consent to surcharge).
[38]     *In re Novinda Corp.*, 585 B.R. 145, 160-61 (10th Cir. BAP 2018) (finding no error in approval of a plan of reorganization funded by $400,000 contribution, a portion of which would be used to finance potential litigation).

not purely speculative in this case. The state court entered an order authorizing the $3,000,000 distribution from the trusts and the Bankruptcy Court found that decision was not likely to be reversed on appeal.

The Debtor asserts three issues with the Bankruptcy Court's findings. First, the Debtor argues the finding that the Trust Modifications were the culmination of years of litigation was clearly erroneous because the Debtor was not allowed to present evidence on this issue at confirmation. The record supports the Bankruptcy Court's findings as the Debtor admitted the state court litigation began in 2013 in his objection to confirmation.[39] Furthermore, the Bankruptcy Court is entitled to take judicial notice of state court proceedings.[40]

Second, the Debtor takes issue with the Bankruptcy Court's finding that the Trust Modifications were permissible pursuant to clear statutory authority, the will creating the Trusts, and well-grounded facts—mainly the state court's valuation of the Alvarado Realty Company's share price. However, in reviewing the probability of success on appeal, the Tenth Circuit instructs a Bankruptcy Court is "not required to 'decid[e] the numerous question[s] of law and fact.' Nor [is] it required to conduct a detailed analysis of the underlying law or a risk-adjusted value of continuing litigation."[41] As such, the Bankruptcy Court was not required to conduct a full inquiry into the state court's findings

---

[39]    *Debtor's Objections to Second Amended Chapter 11 Plan of Reorganization of the Official Committee of Unsecured Creditors* at 5, *in* Appellant's App. at 315.
[40]    *In re Agrawal*, 562 B.R. 510, 517 n.4 (Bankr. W.D. Okla. 2016) (citing Tenth Circuit authority allowing courts to take judicial notice of state court records).
[41]    *In re Rich Glob., LLC*, 652 F. App'x 625, 631-32 (10th Cir. 2016) (unpublished) (internal citation omitted).

of the fair market value of Alvarado Realty Company's shares or other facts addressed by the state court in ordering the Trust Modifications.

Finally, the Debtor asserts the Bankruptcy Court incorrectly found the state court actions were not procedurally defective because the requests for modification effectively related back to the Brothers' August 14, 2015 state court counterclaims against the Debtor. The Debtor argues the August 14, 2015 counterclaim issues were never litigated and were different than the issues raised in the Trust Modifications. This argument is immaterial to the Debtor's success on appeal of the Trust Modifications as the Debtor does not argue preclusive effect. Furthermore, the Bankruptcy Court found the state court's proceeding with the original state court action did not prejudice the Debtor as the counterclaims were substantially similar. We see no error in the Bankruptcy Court's findings as the Debtor was sufficiently aware the Brothers sought to modify the Trusts in their original counterclaims and the applicable statute of limitation had not run as of the filing of the second request to modify the Trusts.[42] Furthermore, any delay in pursuing the Trust Modification was undoubtedly caused by the Debtor's litigation tactics.

### d. The Bankruptcy Court did not abuse its discretion in approving the settlement agreement contained in the Committee's plan

*The Committee's standing to pursue settlement of claims*

The Debtor argues the Committee lacked standing to pursue the settlement of the Debtor's claims against the Brothers, Alvarado Realty Company, and members of the

---

[42]    *See* Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed. 2019) ("[A]n amendment alleging a claim or defense that arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

17

Abruzzo family. The Debtor asserts that under Rule 9019, only the trustee or a debtor-in-possession have authority to bring a motion for approval of settlement. Section 1121(c) provides "[a]ny party in interest, including the debtor, the trustee, [or] a creditors' committee . . . may file a plan."[43] A plan of reorganization may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[44] None of the authority the Debtor cites addresses § 1123(b)(3)(A)'s allowance of a creditors' committee to settle claims belonging to a debtor through a plan. Accordingly, the Bankruptcy Court did not err in allowing the Committee to propose a plan that settled claims belonging to the Debtor.

> *The Bankruptcy Court did not abuse its discretion by approving the settlement of the Debtor's claims under Rule 9019*

The Debtor argues the Bankruptcy Court erred in its application of factors evaluated upon reviewing a settlement as set out in *In re Kopexa Realty Venture Co.* (the "Kopexa Factors").[45] Because Rule 9019 does not contain a standard under which to evaluate a settlement agreement, the Tenth Circuit, although not in a published opinion, has stated: "[a] court's general charge is to determine whether the settlement is fair and

---

original pleading will relate back to the original pleading."); *see also Reagan v. Brown*, 285 P.2d 789, 792 (N.M. 1955) (holding the generally applicable four year statute of limitations applies to causes of actions relating to trusts except where the defendant has fraudulently concealed the cause of action).

[43]     11 U.S.C. § 1121(c).
[44]     11 U.S.C. § 1123(b)(3)(A).
[45]     *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020 (10th Cir. BAP 1997).

equitable and in the best interests of the estate."[46] Over time, this Court accepted the

Kopexa Factors as a means to evaluate Rule 9019 settlements consistent with the Tenth

Circuit's standard.[47]

> [T]he *Kopexa* factors are: "[1] the probable success of the underlying litigation on the merits, [2] the possible difficulty in collection of a judgment, [3] the complexity and expense of the litigation, and [4] the interests of creditors in deference to their reasonable views."[48]

"'[T]he court need not resolve all of these issues, but must only identify them 'so that the

reasonableness of the settlement may be evaluated.'"[49]

The Bankruptcy Court applied the Kopexa Factors and concluded the factors

weighed heavily in favor of settlement of the Debtor's claims. The Debtor argues the

Bankruptcy Court improperly evaluated the Kopexa Factors. First, the Debtor asserts the

Bankruptcy Court incorrectly found the Debtor was not likely to succeed on the merits of

his claims in light of his expert's testimony that the claims were meritorious and

valuable. However, the record supports the Bankruptcy Court's findings the claims

lacked merit as the Debtor did not prevail in the prior state court litigation and the state

court issued $100,000 in sanctions against the Debtor for pursuing frivolous claims.[50]

As the Bankruptcy Court determined there would be no difficulty collecting on a

judgment, the Debtor does not contest this factor. Next, the Debtor argues the Bankruptcy

---

[46]     *In re Velasquez*, No. NM-18-076, 2019 WL 2511557, at \*4 (10th Cir. BAP June 18, 2019) (unpublished) (quoting *In re Rich Glob., LLC*, 652 F. App'x at 631).
[47]     *Id.* at \*5.
[48]     *Id.* (quoting *In re Kopexa Realty Venture Co.*, 213 B.R. at 1022).
[49]     *Id.* (quoting *In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 579 (D. Colo. 1998)).
[50]     The state court held the Debtor "could not, and did not, prove" his claims for breach of fiduciary duty and dividend suppression at trial and that the Debtor was "an

Court erred in assessing the complexity and expense of litigating the claims as his attorney had agreed to proceed on a contingency basis. The Bankruptcy Court noted that upon losing in the prior litigation, the Debtor was ordered to pay the opposing counsel's attorneys' fees and a $100,000 sanction on top of his attorneys' fees. We also note the contingency fee agreement provided counsel would seek reimbursement of costs and expenses from the Debtor's estate periodically during the litigation, requiring pre-judgment payment.[51] Accordingly, we agree this factor favored settlement.

The Debtor does not address the final factor, the interest of creditors, but argues public policy weighs against the settlement because the Committee's plan involved avoidance of spendthrift trust provisions. This argument fails as we previously explained the Committee's plan no longer violated New Mexico trust law based on the state court Trust Modifications. Furthermore, as the Bankruptcy Court pointed out, the unsecured creditors voted against the Debtor's prior plans and the Committee supported the settlement proposed in its plan. But for the Committee's plan, unsecured creditors would receive no distribution from the millions of dollars held in the Trusts for the Debtor's benefit. Accordingly, the Bankruptcy Court did not abuse its discretion in approving the

---

individual who bears no allegiance to the truth, but who will say whatever he thinks will achieve his goals." *Opinion* at 4, *in* Appellant's App. at 354 (quoting the state court opinion without citation).

[51]    *Engagement Letter* at 3, *in* Appellant's App. at 2460.

20

settlement of the Debtor's claims against the Brothers, Alvarado Realty Company, or any other Abruzzo family members.

### IV. Conclusion

After failing to obtain enough votes to confirm his prior six plans, the Debtor objected to the Committee's proposed plan of reorganization. Upon review of this appeal, the Bankruptcy Court did not deny the Debtor due process, made no errors in its findings of fact, and did not abuse its discretion in approving the settlement of the Debtor's claims against Alvarado Realty Company and his deceased wife's family. Accordingly, we AFFIRM the Bankruptcy Court's *Order* and *Opinion* confirming the Committee's plan of reorganization.[52]

---

[52] The Debtor filed the *Motion of Appellant for Leave to File Sealed Documents* (BAP ECF No. 15), seeking authority to file parts of his appendix under seal. This motion is GRANTED.