FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**August 14, 2023**

Anne M. Zoltani
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE BIANCA KAYLENE RUIZ,

Debtor.

_____

BIANCA KAYLENE RUIZ,

Appellant,

v.

JACOB RUIZ and STEPHEN W. RUPP,
Chapter 7 Trustee,

Appellees.

BAP No. 23-006

Bankr. No. 21-24823
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Utah
_____

Submitted on the briefs.[2]

_____

Before **ROMERO**, Chief Judge, **HALL**, and **LOYD**, Bankruptcy Judges.

_____

---

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[2] The Appellant did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. Bankr. P. 8019(b). The case is therefore ordered submitted without oral argument.

**HALL**, Bankruptcy Judge.

_____

Settlements are generally favored in bankruptcy to expeditiously close the debtor's estate. Here, a chapter 7 trustee entered into a settlement with the debtor's estranged spouse regarding the bankruptcy estate's community property interest in three vehicles, two of which were in the estranged spouse's possession and one of which was in the debtor's possession. The debtor objected to the settlement contending the community property interests in the two vehicles in her husband's possession should be available to distribute to creditors of her bankruptcy estate—specifically to pay her nondischargeable student loan debt. The Bankruptcy Court approved the settlement agreement over the debtor's objection, and the debtor appealed.

I.     **Background**

a.   *The Vehicles and Commencement of Divorce Proceedings*

In March 2017, Appellant Bianca Ruiz ("Appellant") and non-debtor spouse Jacob Ruiz ("Jacob") purchased a 2013 Audi with a joint car loan (the "Audi Loan") from Navy Federal Credit Union ("NFCU").[3] In March 2018, Jacob purchased a 2008 Subaru with an individual car loan from NFCU.[4] Appellant and Jacob apparently already owned a 2002 Nissan (the "Nissan," collectively with the Audi and Subaru, the "Vehicles").

---

[3] *Debtor's Motion for Judicial Notice #2* at 3, *in* Appellant's App. at 183.

[4] *Id.* at 6, *in* Appellant's App. at 186.

In March 2019, Appellant and Jacob commenced divorce proceedings in California (the "Divorce Proceedings").[5] The California court has not entered a divorce decree, thus no property has been divided and distributed.[6]

b. *The Bankruptcy*

In November 2021, Appellant filed a petition for chapter 7 bankruptcy relief in Utah.[7] The Bankruptcy Court assigned Stephen Rupp as the chapter 7 trustee (the "Trustee").[8] During the bankruptcy case, Appellant filed statements and schedules listing, among other things, community property interests in all of the Vehicles, specifically: (1) the Audi valued at $8,180.00, subject to NFCU's $4,013 secured claim; (2) the Subaru valued at $7,383; and (3) the Nissan valued at $4,735.30.[9] Appellant claimed Utah's $3,000 vehicle exemption for the Audi.[10] Additionally, Appellant scheduled student loan debt totaling $70,049.35.[11] When Appellant filed her bankruptcy petition, Jacob had

---

[5] *Debtor's Motion for Judicial Notice in Support of Debtor's Objections to Claims* at 3, *in* Appellant's App. at 25.

[6] *Id.*

[7] Bankruptcy Court Docket, *in* Appellant's App. at 20.

[8] *Id.*

[9] Schedule A/B ¶¶3.1, 3.2, and 3.3, *in* Appellant's App. at 104-06.

[10] Schedule C, *in* Appellant's App. at 114.

[11] Schedule E/F ¶4.4, *in* Appellant's App. at 118; Proof of Claim No. 6.

physical possession of the Subaru and Nissan, while Appellant had physical possession of the Audi.[12] Jacob disputed the Subaru was community property.[13]

In December 2021, upon Jacob's request, the California court entered an order in the Divorce Proceedings allowing Jacob to deduct $506 from Appellant's monthly support to pay toward the Audi Loan.[14] During the pendency of the bankruptcy case, Jacob paid off the Audi Loan's petition date balance.[15]

On December 8, 2022, the Trustee filed a *Motion for Turnover Order* (the "Turnover Motion") seeking turnover of the Audi or equivalent value of $5,181.00 and the balance of the estate's portion of Appellant's 2021 tax refunds.[16] The Trustee also filed a *Motion to Approve Settlement/Compromise Between Trustee and Jacob Ruiz* (the "Settlement Motion" together with the Turnover Motion, the "Motions")[17] under Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019").[18] The Settlement Motion provided

---

[12] *Amended Motion for Approval of Settlement Agreement* at 2, *in* Appellant's App. at 135.

[13] *Id.*

[14] *Debtor's Motion for Judicial Notice #2* at 4, ¶4, *in* Appellant's App. at 184 (noting Exhibit 3 was a copy of the California court's order from the Divorce Proceedings allowing Jacob to deduct $506 from the monthly exempt support income).

[15] *Amended Motion for Approval of Settlement Agreement* at 3, *in* Appellant's App. at 136.

[16] Turnover Motion, *in* Appellant's App. at 127–30.

[17] The initial motion was filed on December 20, 2022, Bankr. ECF No. 116, then the Trustee filed an amended motion on December 21, 2022, to correct a typographical error.

[18] *Amended Motion for Approval of Settlement Agreement*, *in* Appellant's App. at 134.

4

Jacob would convey to the bankruptcy estate any community property interest in, and any claims related to, the Audi, and the Trustee would convey to Jacob the bankruptcy estate's interest, if any, in the Subaru and Nissan subject to any community debt and claims (the "Settlement").[19] Appellant filed two motions requesting the Bankruptcy Court take judicial notice of certain facts and additionally objected to the Motions.[20]

On January 19, 2023, the Bankruptcy Court held a hearing on the Motions and granted Appellant's motions requesting judicial notice of certain facts.[21] On February 16, 2023, the Bankruptcy Court issued an oral ruling in favor of the Trustee on the Motions ("the Final Order")[22] and entered judgment.[23] Appellant filed her notice of appeal the next day.[24]

---

[19] *Amended Motion for Approval of Settlement Agreement* at 4, *in* Appellant's App. at 137. The Settlement Motion also indicated any and all claims arising from the Audi Loan payments were meant to be for the benefit of the bankruptcy estate in the amount of no less than $4,013.

[20] *Debtor's Motion for Judicial Notice in Support of Debtor's Objections to Claims*, *in* Appellant's App. at 23; *Debtor's Motion for Judicial Notice #2* at 4, *in* Appellant's App. at 181; and *Response and Objections to Trustee's: (1) Motion to Aprove [sic] Settlement, and (2) Motion to Turn Over Property*, *in* Appellant's App. at 145.

[21] Bankruptcy Court Docket, *in* Appellant's App. at 20.

[22] February 16, 2023 Hr'g Tr. 1–10, *in* Appellant's App. at 321–30.

[23] *Order (1) Granting Trustee's Amended Motion for Approval of Settlement Agreement (Docket No. 118); (2) Granting Trustee's Motion for Turnover Order (Docket No. 111); (3) Granting Debtor's Motion for Judicial Notice in Support of Debtor's Objections to Claims (Docket No. 77); and (4) Granting Debtor's Motion for Judicial Notice #2 (Docket No. 123)*, *in* Appellant's App. at 288.

[24] On February 16, 2023, Appellant filed a motion for stay pending appeal with the Bankruptcy Court, Bankr. Dkt. No. 142 (later amended on February 27, 2023, at Bankr. Dkt. No. 162), and then filed an *Emergency Motion for Stay of Bankruptcy Court Order Pending Appeal* with this Court, BAP ECF No. 6 (the "Stay Motion(s)"). This Court entered an *Order Suspending Consideration* of its Stay Motion and the Bankruptcy Court

### c. Bifurcation of the Notice of Appeal

Subsequently, this Court entered an *Order Construing Notice of Appeal as Two Notices of Appeal.*[25] The appeal of the order approving the Settlement Motion was assigned as BAP Appeal No. UT-23-006, and the appeal of the Turnover Motion order was assigned as BAP Appeal No. UT-23-007. During the pendency of these appeals, the Trustee filed a *Notice of Intent to Abandon Remaining Properties and Claims Towards Concluding Administration of this Case* stating he (i) relied on Appellant's representations on the exempt nature of the $4,013 of postpetition Audi equity, (ii) received the outstanding $1,168 from Appellant in satisfaction of the bankruptcy estate's nonexempt claims or interests in the Audi, and (iii) abandoned any further interest or claim in the Audi.[26] Thereafter, Appellant apparently chose not to pursue BAP Appeal No. UT-23-007 and, as a result, a prior panel of this Court dismissed the appeal for failure to prosecute on April 14, 2023.[27]

### d. Settlement Motion Order is before this Court on Appeal

The appeal of the order approving the Settlement Motion remains before the BAP.

---

held a hearing and denied its Stay Motion finding no sufficient cause to grant the stay and noting the Trustee elected not to pursue enforcement of the settlement agreement. Accordingly, to the extent relief is still requested, the Stay Motion is now moot and is denied as no case or controversy remains for the Stay Motion in this Court. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) ("[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.").

[25] BAP ECF No. 8.

[26] Bankr. Dkt. No. 174.

[27] BAP Appeal No. UT-23-007, ECF No. 36.

Appellant seeks reversal contending the community property interests in the Subaru and Nissan should be returned to the bankruptcy estate for liquidation with the proceeds thereof distributed to creditors, specifically to pay her nondischargeable student loan debt.

## II. Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[28] Appellant timely filed her notice of appeal after the Bankruptcy Court entered the Final Order.[29] Below, the Bankruptcy Court indicated it was uncertain whether Appellant had standing to object to the Settlement Motion.[30] Because Appellee did not appear and challenge Appellant's standing, this Court assumes, without deciding, Appellant has standing to appeal the Bankruptcy Court's denial of her objection to the Settlement Motion.[31] Furthermore, no party elected

---

[28] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[29] *See In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir. 1990) (noting "the appropriate 'judicial unit' for application of these finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition"). *See Korngold v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 250, 254 (10th Cir. BAP 2006) (concluding an order approving a settlement agreement is a final order.).

[30] February 16, 2023 Hr'g Tr. at 7:24–8:20, *in* Appellant's App. at 327–28.

[31] This Court may not assume Article III standing to reach the merits of Appellant's case. *See Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (citing *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). We are satisfied Article III standing exists as a favorable decision to Appellant would redress her injury by providing more assets to liquidate and pay down the bankruptcy estate's nondischargeable debts. *See In re C.W. Mining Co.*, 636 F.3d 1257, 1260 n.5 (10th Cir. 2011) (citing *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v.*

to have the district court hear the appeal. Accordingly, this Court has jurisdiction to hear this appeal.

### III.   Statement of Issues and Standard of Review

Appellant asserts there are seven issues on appeal.[32] Appellant's enumerated issues on appeal all address whether the Bankruptcy Court properly considered the bankruptcy estate's interests in the Vehicles and the effect of the Settlement on the bankruptcy estate, Appellant, and her creditors. However, "[a] reviewing court is not obligated to track precisely the sub-issues raised in a litigant's brief or to address every argument

---

*City of Jacksonville,* 508 U.S. 656, 663–64 (1993) (outlining the three conjunctive factors required to show Article III standing)). However, standing to appeal or object to a bankruptcy court order requires a party to be a "person aggrieved." *See id.* (quoting *In re Alpex Comput. Corp.*, 71 F.3d 353, 357 n.6 (10th Cir. 1995)). A person aggrieved "is a prudential limitation, not an Article III limitation." *Id.* (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 n.20 (3d Cir. 2004)). Thus, this Court may assume, without deciding, Appellant is a person aggrieved for purposes of this appeal to decide the case on the merits. *See id.* (citing *Kennedy v. Allera*, 612 F.3d 261, 270 n.3 (4th Cir. 2010)).

[32] Appellant identifies the following issues on appeal: did the Bankruptcy Court err by failing to consider relevant judicially noticed facts and facts presented by the debtor in its *Kopexa* analysis; (ii) did the Bankruptcy Court err by admitting and considering evidence contrary to its own judicially noticed facts in its *Kopexa* evaluation; (iii) did the Bankruptcy Court err by applying the business judgment standard in excluding the Appellant's objections and facts; (iv) did the Bankruptcy Court err by not applying a community property presumption to the estate's vehicles in the *Kopexa* analysis; (v) did the Bankruptcy Court err by considering the expense of litigating facts it already took judicial notice of in its *Kopexa* evaluation; (vi) did the Bankruptcy Court err by refusing to acknowledge the exempt status of post-petition child and spousal support used to satisfy a vehicle lien post-petition; and (vii) did the Bankruptcy Court err by approving the Settlement that conveys over $12,000 in estate property to a third party without receiving any consideration from that third party. Appellant Opening Br. 10–13.

presented."[33] Here, there is only one issue on appeal—whether the Bankruptcy Court abused its discretion by granting the Settlement Motion. Under the abuse of discretion standard, this Court will not disturb a bankruptcy court's decision unless it "has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[34] An abuse of discretion occurs when "the [trial] court's decision is 'arbitrary, capricious or whimsical,' or results in a 'manifestly unreasonable judgment.'"[35] "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."[36]

## IV.　Discussion

In a chapter 7 bankruptcy case, the trustee's duties include, among other things, to "collect and reduce to money the property of the estate" and close the "estate as expeditiously as is compatible with the best interests of parties in interest[.]"[37] Thus, a chapter 7 trustee generally seeks to quickly but prudently liquidate property of the

---

[33] *Armstrong v. Rushton (In re Armstrong)*, 99 F. App'x 210, 213, n.1 (10th Cir. 2004) (citing 19 James Wm. Moore et al., *Moore's Federal Practice*, 205–1 (3d ed. 2003)).

[34] *In re Arenas*, 535 B.R. 845, 849 (10th Cir. BAP 2015) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)).

[35] *Moothart*, 21 F.3d at 1504–05 (quoting *United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987)).

[36] *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018) (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)).

[37] 11 U.S.C. § 704(a)(1).

bankruptcy estate for the benefit of unsecured creditors.[38] Property of the bankruptcy estate includes all of the debtor's community property interests,[39] which are governed by applicable state law.[40] In California, community property is generally all property acquired during marriage.[41] A debtor's interest in community property subjects the whole community property interest to enforcement of any judgment against the debtor and becomes part of the debtor's bankruptcy estate.[42]

In an effort to efficiently close a debtor's bankruptcy estate, a chapter 7 trustee may enter into settlements or compromises under Rule 9019.[43] As a general rule, settlements are favored in bankruptcy[44] because they avoid the expense and burden associated with litigating contested issues at the expense of the return available to

---

[38] *See In re Moreno*, 554 B.R. 504, 509 (Bankr. D. N.M. 2016).

[39] 11 U.S.C. § 541(a)(2).

[40] *See Butner v. United States*, 440 U.S. 48, 54–55 (1979).

[41] Cal. Fam. Code § 760 ("Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property.").

[42] Cal. Fam. Code § 910 ("Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt. While community property may be liable for a spouse's debts, the spouse personally is not liable for the debt if that spouse did not incur the debt."). *See also* Cal. C.C.P. § 695.020; *In re Brace*, 470 P.3d 15, 19 (Cal. 2020) (concluding if property is community property, then the entirety of the community property interest becomes part of the bankruptcy estate.).

[43] Fed. R. Bankr. P. 9019.

[44] *Kearney v. Unsecured Creditors Comm.*, 987 F.3d 1284, 1295 (10th Cir. 2021).

creditors.[45] Neither Rule 9019 nor the Bankruptcy Code contain the standard by which a court must evaluate a compromise or settlement.[46] The Tenth Circuit has said it will "affirm a bankruptcy court's approval of a settlement unless [it] find[s] it either lacking in evidentiary support or disconnected to the evidence in the record."[47] Furthermore, in a handful of unpublished decisions, the Tenth Circuit has held "[a] court's general charge is to determine whether the settlement is fair and equitable and in the best interests of the estate."[48] Simply put, this Court must "determine whether the settlement falls below the lowest point in the range of reasonableness."[49] Such determination "must be an informed one based upon an objective evaluation of developed facts."[50]

In evaluating whether a compromise or settlement is fair, equitable, and in the best interest of the estate, the Tenth Circuit and the BAP have routinely applied the *Kopexa* factors.[51] When evaluating a proposed compromise or settlement, the *Kopexa* factors

[45]*Korngold v. Loyd (In re S. Med. Arts Cos., Inc.),* 343 B.R. 250, 255 (10th Cir. BAP 2006) (citing 10 *Collier on Bankruptcy* ¶ 9019.01 at 9019.2 (15th ed. 2006) and *Martin v. Kane (In re A.C. Props.),* 784 F.2d 1377, 1380-81 (9th Cir. 1986)).

[46] *See id.*

[47] *Kearney*, 987 F.3d at 1295; *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997).

[48] *Rich Dad Operating Co. v. Zubrod (In re Rich Glob., LLC)*, 652 F. App'x 625, 631 (10th Cir. 2016) (unpublished) (citing *Official Comm. of Unsecured Creditors of W. Pac. Airlines, Inc. v. W. Pac. Airlines, Inc. (In re W. Pac. Airlines, Inc.)*, 219 B.R. 575, 579 (D. Colo. 1998)).

[49] *In re Velzaquez*, No. BAP NM-18-076, 2019 WL 2511557, at *4 (10th Cir. BAP June 18, 2019) (unpublished) (quoting *In re Rich Glob., LLC*, 652 F. App'x at 631).

[50] *Id.* (quoting *Korngold v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 250, 256 (10th Cir. BAP 2006)); *Kearney*, 987 F.3d at 1295 (citing *Kopexa*, 213 B.R. at 1022)).

[51] *Kearney*, 987 F.3d at 1295; *Kopexa*, 213 B.R. at 1022.

require the court to analyze "[1] the probable success of the underlying litigation on the merits, [2] the possible difficulty in collection of a judgment, [3] the complexity and expense of the litigation, and [4] the interests of creditors in deference to their reasonable views."[52]

> 1. *The Bankruptcy Court did not abuse its discretion by weighing the* Kopexa *factors in favor of granting the Settlement Motion.*

In the oral ruling, the Bankruptcy Court determined all four of the *Kopexa* factors weighed in favor of settlement. With respect to the first *Kopexa* factor, the probability of success of the underlying litigation on the merits, the Bankruptcy Court recognized Jacob claimed the Subaru was his separate property rather than community property and, therefore, was not property of the bankruptcy estate. In contrast, Appellant claimed all of the Vehicles, including the Subaru, are community property and, thus, property of her bankruptcy estate. The Bankruptcy Court recognized litigation to determine the relative rights in and to the Vehicles, including the Subaru, could be costly with the possible return to the bankruptcy estate uncertain. The Bankruptcy Court reasonably concluded the Settlement avoids these risks entirely by eliminating possibly costly and contentious litigation.

The Bankruptcy Court found the second *Kopexa* factor, the possible difficulty in collecting any judgment, to also weigh in favor of approving the Settlement. The Bankruptcy Court found the cost and complexity of collecting a judgment for the

---

[52] *Kopexa*, 213 B.R. at 1022.

Vehicles in Florida where Jacob resides weighed in favor of settlement despite the Trustee's expressed confidence he could collect a judgment for them. While the analysis of the second *Kopexa* factor typically focuses on the defendant's ability to pay, it can also encompass the costs associated with collecting and enforcing any judgment.[53] After all, the second *Kopexa* factor "goes to the heart of the Rule 9019 inquiry: a cost-benefit analysis."[54] It was not outside the range of reasonableness for the Bankruptcy Court to reach such a conclusion.

As to the third *Kopexa* factor, the complexity and expense of litigation, the Bankruptcy Court determined continued litigation of the bankruptcy estate's claim to the Vehicles, which Jacob contended were separate property, would be expensive compared to any potential recovery. The Bankruptcy Court specifically found, but for the Settlement, the Trustee would incur not only litigation expenses but expenses associated with vehicle recovery, storage, and sale, all of which would be avoided by virtue of the Settlement. Again, the Bankruptcy Court's conclusion such potential costs weighed in favor of approval of the Settlement is justified and entirely reasonable.

Finally, under the fourth *Kopexa* factor, the interests of creditors was considered by the Bankruptcy Court, which found avoiding the cost of litigation reaped greater benefit to the creditors. Moreover, only Appellant, and no creditors of the bankruptcy estate, objected to the Settlement Motion. Thus, the Bankruptcy Court concluded the

---

[53] *Velasquez*, 2019 WL 2511557, at *7-8.

[54] *Id.* at *8.

13

fourth *Kopexa* factor weighed in favor of approving the Settlement, and this Court finds no error in the Bankruptcy Court's conclusion or reasoning.

Appellant does not clearly direct her arguments to any specific *Kopexa* factor, but instead holistically responds to the Bankruptcy Court's analysis. First, Appellant contends all three Vehicles were community property and, thus, property of the bankruptcy estate. Accordingly, Appellant asserts the Settlement Motion results in a net loss of $12,118 to the bankruptcy estate and is not, therefore, in the best interest of the creditors. Appellant also emphasizes Jacob testified the Subaru is community property under penalty of perjury in the Divorce Proceedings, and the Bankruptcy Court took judicial notice of this fact. Consequently, Appellant argues there is a strong chance of success on the merits of litigation related to the Subaru.

Appellant also contends the Settlement Motion is detrimental to the creditors.[55] She asserts the relevant number to analyze the litigation costs is the absolute difference between the net benefit of disregarding the Settlement Motion and net detriment of enforcing the Settlement Motion—$24,236. Thus, to weigh in favor of settlement, litigation costs would have to surpass $24,236 to breakeven with the harm caused by the Settlement Motion.[56]

---

[55] Appellant Opening Br. 39.

[56] In her brief, Appellant provides an analysis concluding the Settlement Motion results in $12,118 net detriment compared to the $12,118 net benefit should the Settlement Motion not exist. Appellant's Opening Br. 33. She then asserts these figures support the absolute difference of $24,236 is the amount the Bankruptcy Court should have considered in analyzing the litigation cost factor. *Id.*

14

However, as set forth above, in weighing all of the *Kopexa* factors, the Bankruptcy Court did not abuse its discretion by granting the Settlement Motion. The Bankruptcy Court carefully considered and determined the Settlement outweighed the potential cost of (i) litigating ownership of the Subaru, (ii) retrieving the Subaru and Nissan from Florida, and (iii) storing and selling the Subaru and Nissan. Moreover, no creditor objected to the Settlement Motion, much less argued the Trustee's cost-benefit analysis in reaching the Settlement was flawed.[57] A settlement "is not required to be the 'best result obtainable.' The [B]ankruptcy [C]ourt's charge is to ensure the trustee exercised sound business judgment in reaching the compromise, not to second guess the trustee."[58]

Therefore, we conclude, based on the evidence in the record, approval of the Settlement satisfies the *Kopexa* factors and does not fall below the lowest point in the range of reasonableness.[59] We further conclude the Settlement is fair, equitable, and in the best interest of the bankruptcy estate.[60]

---

[57]As set forth in *Velasquez,* Appellant's arguments "highlight the conflict between [her] personal interests and the Trustee's duty to maximize the estate." *Velasquez*, 2019 WL 2511557, at *8.

[58]*In re Amerson,* No. BAP CO-14-045, 2015 WL 5162763, at *7 (10th Cir. BAP Sept. 2, 2015), *aff'd*, 839 F.3d 1290 (10th Cir. 2016) (unpublished).

[59]*Kearney v. Unsecured Creditors Comm.*, 987 F.3d 1284, 1295 (10th Cir. 2021) (citing *In re Dennett*, 449 B.R. 139, 145 (Bankr. D. Utah. 2011)).

[60]*In re Rich Glob., LLC*, 652 F. App'x 625, 631 (10th Cir. 2016) ("[A] court's general charge is to determine whether the settlement is fair and equitable and in the best interests of the estate.").

2. *The Bankruptcy Court did not abuse its discretion by relying on mistakes of fact and misrepresentations to grant the Settlement Motion.*

Appellant also contends the Bankruptcy Court relied on mistakes of fact and misrepresentations to approve the Settlement Motion despite taking judicial notice of certain facts. Appellant first asserts the Trustee misrepresented the bankruptcy estate could recover $4,013 in Audi equity because the source of the loan payments can be traced back to exempt support payments,[61] and the Bankruptcy Court erred in ignoring the postpetition exempt status of the $4,013. Appellant also argues the Bankruptcy Court misapplied California community property law by considering Jacob had an interest separable from the community property interest. Finally, Appellant further contends the Bankruptcy Court made a legal mistake by considering evidence contrary to the judicially noticed facts proving the Subaru was property of the bankruptcy estate.[62]

The Bankruptcy Court did not rely on the bankruptcy estate's potential recovery of the Audi equity to approve the Settlement and grant the Settlement Motion.[63] Although the Final Order references the potential estate recovery of the equity in the Audi, the Bankruptcy Court provided Appellant an opportunity to file amended schedules showing her interest and exemption in the $4,013 paid postpetition on the loan secured by the

---

[61] Appellant argues the Bankruptcy Court erred in adopting misrepresentations and stating the bankruptcy estate could recover $4,013 in equity from the Audi, thus this Court should apply Fed. R. Civ. P. 60(b)(3) or (6) "to relieve [Appellant] from this order by reversing the bankruptcy court's approval of the Settlement Agreement." Appellant Opening Br. 25.

[62] Appellant Opening Br. 14–15.

[63] February 16, 2023 Hr'g Tr., *in* Appellant's App. at 321.

16

Audi. Such opportunity undermines Appellant's position. Additionally, even if the Bankruptcy Court misapplied California community property law, the Bankruptcy Court's reasoning focused on the cost of litigation to resolve the dispute created by Jacob's assertion that the Subaru was his separate property rather than application of the law to the facts, which is permissible in the context of evaluating a proposed settlement.

Finally, the judicially noticed facts indicate Jacob testified under penalty of perjury on two occasions that the Vehicles were not his separate property.[64] It appears Appellant believes these stated facts may be used to prove the Subaru is, in fact, community property and, therefore, property of the bankruptcy estate. Appellant is likely correct. Despite Appellant's contention, however, the Bankruptcy Court's recognition of the dispute over whether the Subaru was community property does not amount to considering evidence contrary to the judicially noticed facts. Instead, the Bankruptcy Court noted Jacob later contended the Subaru was his own separate property, which created a contested issue potentially requiring costly litigation. Critical to understanding the Bankruptcy Court's decision is its recognition of the relatively small return likely available to the estate from the Vehicles, which would only be diminished by litigation expenses and sale costs which could be avoided through approval of the Settlement.

Accordingly, the Bankruptcy Court did not abuse its discretion by relying on misrepresentations and mistakes of fact to approve the Settlement Motion.

---

[64]*Debtor's Motion for Judicial Notice # 2* at 10, *in* Appellant's App. at 190.

**V.    Conclusion**

The record does not show the Bankruptcy Court's decision to approve the Settlement Motion was arbitrary, capricious, or whimsical in any way. Accordingly, we AFFIRM the Bankruptcy Court.